STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel G. SCHEIDELL, Defendant-Appellant.

Supreme Court

*No. 97–1426–CR. Oral argument March 3, 1999.——Decided June 30, 1999.*

(Also reported in 595 N.W.2d 661.)

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Mitchell E. Cooper,* assistant state public defender.

¶ 1. JON P. WILCOX, J. This is a review of a published opinion of the court of appeals, *State v. Scheidell,* 220 Wis. 2d 753, 755, 584 N.W.2d 897 (Ct. App. 1998), which reversed and remanded a judgment and order of the circuit court for Racine County, Honorable Emmanuel J. Vuvunas. The defendant, Daniel G. Scheidell, was found guilty by a jury of one count of attempted first-degree sexual assault while masked and one count of armed burglary while masked. The State seeks reversal of the court of appeals' newly-established test to determine the admissibility of other acts evidence committed by an unknown third party which is proffered by the accused on the issue of identity. Instead, the State urges us to apply *State v. Denny,* 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984) when an accused seeks to use such other acts evidence.

¶ 2. We do not agree that *Denny* can be molded to fit the facts of this case. We also decline to adopt the court of appeals' newly-established test. Rather, we conclude that our recent decision in *State v. Sullivan,* 216 Wis. 2d 768, 576 N.W.2d 30 (1998), provides the proper framework when a defendant seeks to introduce

other acts evidence that was perpetrated by an unknown third party. Even though the circuit court failed to apply the proper test in its denial of Scheidell's offer of proof, we conclude that its determination to exclude the other acts evidence was proper. Accordingly, we reverse the decision of the court of appeals.[1]

## I.

¶ 3. The facts are not in dispute. In August 1994, Jennifer D. began working at the Chancery Restaurant where she met Scheidell. When Jennifer and her two roommates were searching for a new apartment in May 1995, Scheidell remarked that two apartments in his building were unoccupied. Only one of the apartments was available, and Jennifer moved into the one-bedroom, studio apartment on the ground floor of the building.[2]

¶ 4. Scheidell was friendly with Jennifer, and stopped by to chat on occasion. Scheidell, who did work

---

[1] In his brief, Scheidell asks this court to review the circuit court's ruling, which was affirmed by the court of appeals, that Scheidell's comparative handprint evidence was inadmissible. Scheidell did not, however, challenge this decision by way of cross petition, and this court granted the State's petition for review as to the first issue only—the test for admissibility of other acts evidence proffered by the defendant. Accordingly, we will not review the issue regarding the relevance of the comparative handprint. Wis. Stat. § (Rule) 809.62(6); *State v. Weber*, 164 Wis. 2d 788, 789–91, 476 N.W.2d 867 (1991); and *Betchkal v. Willis*, 127 Wis. 2d 177, 183 n.4, 378 N.W.2d 684 (1985)(if an issue is not raised in the petition for review or in a cross-petition, the issue is not before us).

[2] Jennifer described the apartment as one big room divided by archways into a kitchen, living room and bedroom with a small bathroom off of the bedroom.

around the building, had obtained a key to Jennifer's apartment from the owner of the building. He had asked to keep the key to help paint her bathroom, and allowed a cable company employee into Jennifer's apartment while she was at work.

¶ 5. At 4:45 a.m., on May 20, 1995, Jennifer awoke to the sound of the window blind falling onto her bathroom floor. She walked into the bathroom and noted that the casement window which she had left ajar for air was now open approximately one foot.

¶ 6. Jennifer shut the window and attempted to go back to sleep. Approximately 30 minutes later, Jennifer awoke with a man straddling her waist. The assailant was wearing a black, knit ski mask with holes for the eyes and mouth, and a nylon jacket draped around his head.

¶ 7. The assailant had pulled up her shirt, exposing her chest, he had his hand over her mouth, and she felt an object at her throat. When Jennifer struggled to break free, he began hitting her in the face with an open hand and tried to pull off her underpants. She was able to get one hand free and began hitting her assailant.

¶ 8. Jennifer testified that she could see his eyes and believed she recognized the assailant as Scheidell. She said his name and asked him what he was doing. The assailant hesitated for a few seconds, pulled back, and then started hitting her again. Jennifer managed to push the assailant off her bed, but he shoved her back down to the bed at which point she noticed that he had a knife with a serrated edge.[3] During the struggle, Jennifer called out "Danno," Scheidell's nickname, at least six times; each time the assailant hesitated and

---

[3] In her attempt to fight off her attacker, Jennifer sustained cuts from the knife on her hand and back.

289

then resumed hitting her harder. She also managed to expose the left side of the man's face from the bottom of the eye to the top of the lip. Based on the assailant's distinctive body and walk, Jennifer was certain her attacker was Scheidell.

¶ 9. Jennifer was again able to kick the assailant away from the bed, allowing her to retrieve a pistol from her dresser. She pointed the pistol at the intruder and he lunged at her. She cocked the trigger, and she told the assailant that if he did not leave, she would shoot him. The assailant left her apartment having never uttered a word.

¶ 10. Jennifer called the Racine police department to report the incident. When the police arrived, Scheidell was coming down the stairs and appeared to have just woken up. Jennifer was brought into the hallway where she accused Scheidell of assaulting her.[4] An officer took Scheidell up to his apartment where Scheidell voluntarily gave a statement. After a limited search of Scheidell's apartment and the outside alley, the police arrested him.

¶ 11. Scheidell was charged with one count of first-degree sexual assault while masked, Wis. Stat. §§ 940.225(1)(b), 939.32, 939.641 (1993–94),[5] and one count of armed burglary while masked, Wis. Stat. §§ 943.10(2)(b) and 939.641. On the first morning of the jury trial, the circuit court heard arguments on

[4] According to the testimony of Officer Stephen Hansen, Jennifer accused Scheidell of assaulting her and she confronted him about having a key to her apartment. Scheidell responded, "How do you know they didn't come through the bathroom window. It's not locked." When asked by the police, Scheidell provided the key to Jennifer's apartment.

[5] All statutory references are to the 1993–94 version of the statutes unless otherwise noted.

Scheidell's intent to present evidence of a similar crime committed by an unknown third party while he was in jail. According to the offer of proof, a police report, Kim C. was attacked in her second floor apartment approximately five weeks after the attack on Jennifer and approximately four blocks away. The offender, reportedly, a white male, age 35 to 40, with a thin build, entered through a previously damaged window, he was wearing some type of hood and possibly a white mask, and he used a butcher knife with a dull, rusty blade.

¶ 12. According to the proffer, at approximately 5:00 a.m., Kim C. awoke with a hand on the bare skin of her back just above her buttocks. When she attempted to get up and turn around, the offender forced her back down by applying pressure to her back with his hand. The offender said, "Get down!" or "Stay down!" The voice sounded familiar, but Kim could not identify her attacker. He then lay on top of Kim's back, and placed the knife on her neck. Kim stated that she grabbed the knife and pushed it away without cutting herself, but the offender retained control of the knife and stayed on top of her.

¶ 13. Kim begged the offender not to hurt her baby, he ordered her to "Stay down!" Kim then told the offender to "Do whatever it is you've got to do. Please don't put it into my butt," to which he responded, "Okay." The offender completed the attack without vaginal or anal entry, and then got up and put his pants on. The offender asked Kim her name, and then told her to "Put your head down. Keep your face down. Keep it down!" Kim covered her head, and the offender covered her buttocks and legs with a blanket. He then fled through the broken window.

¶ 14. The circuit court excluded the evidence based on *Denny*, 120 Wis. 2d 614. Applying *Denny*, the

291

circuit court concluded that while the crimes were strikingly similar, there was no showing of any direct connection between the crimes; therefore, the evidence was irrelevant and inadmissible.[6] The jury found Scheidell guilty on both counts and Scheidell was sentenced to 25 years in prison on each count to run concurrently.

¶ 15. Scheidell filed a motion for post-conviction relief, arguing that the circuit court erred by excluding the evidence of the third-party similar crime evidence and his comparative handprint evidence. The circuit court denied Scheidell's post-conviction motion. Scheidell appealed.

¶ 16. The court of appeals reversed.[7] The court first held that *Denny* was inapplicable because Scheidell sought admission of the third-party similar crime evidence to raise a doubt that he was the person who assaulted Jennifer; thus, the protections of *Denny*'s "legitimate tendency" test were not necessary. *Scheidell*, 220 Wis. 2d at 762–63. The court next held that the *modus operandi* test, adopted in *State v. Fishnick*, 127 Wis. 2d 247, 378 N.W.2d 272 (1985), where the state seeks to introduce other acts evidence for purposes of "identity" pursuant to Wis. Stat. § 904.04(2), should not be applied to a defendant seek-

---

[6] If the proffered evidence was allowed, the prosecutor was prepared to submit evidence of Kim C.'s seven prior convictions as well as two possibly false reports she made to the police.

[7] The court of appeals affirmed the circuit court's discretionary determination to not admit Scheidell's comparative handprint exhibit into evidence. *State v. Scheidell*, 220 Wis. 2d 753, 774, 584 N.W.2d 897 (Ct. App. 1998). Again, we will not review the admissibility of the handprint exhibit. *See* n.1, *supra*.

ing to present such evidence. *Scheidell*, 220 Wis. 2d at 765–66.

¶ 17. Instead, the court of appeals modified *State v. Garfole*, 388 A.2d 587 (N.J. 1978), and adopted a new standard of admissibility: "when a defendant seeks to offer 'other acts' evidence regarding identification, prejudice is no longer a factor and the trial court should use an admissibility standard that concentrates on the simple relevancy as to guilt and innocence." *Scheidell*, 220 Wis. 2d at 766. Under this test, similarities between the other acts and the charged crime are not essential; rather, the relevancy of the other acts evidence should be balanced against considerations of confusion of the issues or misleading the jury. *Id.* at 763–64, 766, 771. The court of appeals then concluded that the circuit court's decision to exclude the evidence constituted reversible error. *Id.* at 773.

¶ 18. In our order granting the State's petition for review, we limited the issue on review to what the appropriate test for admissibility of other acts evidence committed by an unknown third party should be when the evidence is proffered by the defendant to prove identity.

## II.

¶ 19. The constitutional right to present evidence is grounded in the confrontation and compulsory process clauses of Art. I, § 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *State v. Pulizzano*, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). An accused's right to cross-examine witnesses and to present witnesses in his or her own defense have long been recognized as fundamental and essential to a fair trial. *Chambers*, 410 U.S. at 302–03;

*Pulizzano*, 155 Wis. 2d at 645. The right to present evidence is not absolute, however. *Pulizzano*, 155 Wis. 2d at 646. Much like the state, an accused "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302. Simply put, an accused has no right, constitutional or otherwise, to present irrelevant evidence. *State v. Robinson*, 146 Wis. 2d 315, 332, 431 N.W.2d 165 (1988).

¶ 20. In this case, Scheidell attempted to admit evidence of a similar crime that was committed by an unknown third party while he was in jail awaiting trial on the pending matter to prove mistaken identity. Wisconsin Stat. § 904.04(2), which governs the use of other acts evidence provides:

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as. . .identity.

¶ 21. The general rule is one of exclusion. *State v. Rutchik*, 116 Wis. 2d 61, 67, 341 N.W.2d 639 (1984). However, other crimes evidence may be admissible if it is probative of intent, identity, or an element of the specific crime charged and this probative value outweighs its prejudicial effect. *Barrera v. State*, 99 Wis. 2d 269, 278, 298 N.W.2d 820 (1980). It is well established that either the state or a defendant may introduce other acts evidence for support. *See, e.g., Whitty v. State*, 34 Wis. 2d 278, 293–94, 149 N.W.2d

557 (1967)(state proffers evidence) and *Denny*, 120 Wis. 2d at 622–24 (defendant proffers evidence).[8]

### III.

¶ 22. The question before the court in this case is which test of admissibility of other acts evidence is most appropriate when the evidence of a similar crime committed by an unknown third party is proffered by the defendant on the issue of identity: the *Denny* "legitimate tendency" test, the *Whitty/Sullivan* other acts evidence test or the newly-established *Garfole* test.

¶ 23. The State contends that the "legitimate tendency" test of *Denny* governs the admissibility of a defendant's proffered evidence of a similar crime committed by an unknown third party. In *Denny*, the defendant, who was convicted by a jury of first-degree murder, sought to introduce evidence suggesting that any one of a number of named third parties had a motive and the opportunity to murder the victim. *Denny*, 120 Wis. 2d at 617. The circuit court ruled that the evidence was irrelevant.

¶ 24. The court of appeals affirmed the decision of the circuit court, but it established a bright line

---

[8] *See also State v. Oberlander*, 149 Wis. 2d 132, 141, 438 N.W.2d 580 (1989)(defendant proffers evidence); *Boyer v. State*, 91 Wis. 2d 647, 660–61, 284 N.W.2d 30 (1979)(defendant proffers evidence); 1 Mueller and Kirkpatrick, *Federal Evidence 2nd Ed.* § 115(f), at 684–87 (1994)(reverse 404(b) evidence); and 2 Weinstein and Berger, *Weinstein's Evidence* § 404(15), at 404–94, and n.11 (1992)(to prove mistaken identity, defendant may show that other crimes similar in detail have been committed at or about the same time by some person other than him/herself); 2 Wigmore, *Evidence* § 304, at 252 (Chadbourn rev. 1979) (other acts evidence may also be available to "negative the accused's guilt").

295

standard, coined the "legitimate tendency" test, to be used when a defendant seeks to introduce third-party defense evidence. *Id.* at 625. Third-party defense evidence may be admissible under the legitimate tendency test if the defendant can show that the third party had (1) the motive and (2) the opportunity to commit the charged crime, and (3) can provide some evidence to directly connect the third person to the crime charged which is not remote in time, place or circumstance. *Id.* at 623–24.

¶ 25. The State urges this court to employ this legitimate tendency test to determine the admissibility of evidence of third-party culpability where the defendant seeks to present evidence that an unknown third party committed a crime similar to the charged crime. The State insists that the focus in cases where the alleged third party goes unnamed would simply be on whether the defendant's evidence of the third party's other acts satisfies the direct connection component of the legitimate tendency test.

¶ 26. We are not persuaded that the legitimate tendency test of *Denny* can or should be molded to fit a situation where the defendant seeks to show that some *unknown* third party committed the charged crime based on evidence of another allegedly similar crime. In a situation where the perpetrator of the allegedly similar crime is unknown, it would be virtually impossible for the defendant to satisfy the motive or the opportunity prongs of the legitimate tendency test of *Denny*. A defendant simply could not show that an unknown third party had the opportunity to commit the charged crime. Nor could the defendant establish a plausible motive for the unknown individual to complete the charged crime. Under the legitimate tendency test, "evidence that simply affords a possible ground of

suspicion against another person should not be admissible." *Denny*, 120 Wis. 2d at 623. Thus, a defendant simply could not meet his or her burden under the legitimate tendency test when the alleged third party is unknown.

¶ 27. If we were to apply *Denny*'s legitimate tendency test to unknown, third-party evidence, the bright line test established in *Denny* would be rendered meaningless or a defendant would face an insurmountable barrier to admissibility. Because there is neither a legal basis nor a compelling reason to apply the legitimate tendency test in this case, we hold that the test is not applicable to the introduction of allegedly similar crime evidence that is committed by an unknown third party.[9] *Denny* simply does not apply to this type of other acts evidence.

## IV.

¶ 28. Wisconsin's seminal case dealing with other acts evidence is *Whitty*, 34 Wis. 2d 278. In *Whitty*, the defendant challenged the admission of evidence for identity purposes regarding a prior attempted assault. *Id.* at 291. The *Whitty* court set forth the analytical framework for determining the admissibility of other acts evidence. *Id.* at 294. The three-step analytical framework is as follows:

[9] We do not consider whether the legitimate tendency test is an appropriate standard for the introduction of third-party defense evidence offered to prove something other than motive. *Cf. State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984).

(1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing identity?

(2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01: (a) does the other acts evidence relate to a fact or proposition that is of consequence to a determination of the action; and (b) does the other acts evidence have a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or other considerations contained in Wis. Stat. § (Rule) 904.03.

*Sullivan*, 216 Wis. 2d at 772–73 (reaffirming vitality of § 904.04(2) and *Whitty*).

¶ 29. In this case, it was Scheidell, not the State, who sought to introduce the other acts evidence to raise doubt as to the identity of the attacker in the charged crime. The court of appeals adopted, and Scheidell urges this court to accept, a less stringent standard for other acts evidence which is proffered by the defense to show mistaken identity.

¶ 30. The court of appeals slightly modified the New Jersey Supreme Court's decision in *Garfole*, 388 A.2d 587. The majority in *Garfole* adopted a lower standard of degree of similarity of offenses when the defendant seeks to use exculpatory, other crimes evidence. *Id.* at 591. Because prejudice to the defendant is no longer a factor, the court held that simple relevance to guilt or innocence should suffice as the standard of admissibility. *Id.* The *Garfole* court further required the circuit court to "weigh in the balance the concern of

the law for orderly and efficient administration of the jury process." *Id.* at 593. Thus, under the *Garfole* test the trial judge acts as the gatekeeper, weighing the "relevance of the disputed evidence as against Rule 4 considerations [the equivalent to Wis. Stat. § 904.03 considerations] which militate for rejection of it." *Garfole*, 388 A.2d at 593.

¶ 31. One dissenting justice in the *Garfole* case criticized the majority's formulation, instead suggesting a two-tier test admitting relevant evidence unless the danger of great consumption of time or jury confusion is acute. *Id.* at 594–95 (Pashman, J., dissenting). Under the two-tier test, the circuit court would make a preliminary determination as to whether defendant's proofs are so highly relevant that they should be admitted without regard to Rule 4 (Wis. Stat. § 904.03) considerations. *Garfole*, 388 A.2d at 594 (Pashman, J., dissenting). If the relevance is not strong enough to meet that standard, then a balancing test is in order. *Id.*

¶ 32. The court of appeals test in this case, a modified *Garfole* test, is more similar to the dissent's first tier (jury is final arbiter) than it is to the majority's formulation (judge is gatekeeper). The test adopted by the court of appeals first requires the circuit court to "use an admissibility standard that concentrates on the simple relevancy as to guilt and innocence [because prejudice is no longer a factor]. The court must balance against relevancy the considerations of § 904.03, STATS." *Scheidell*, 220 Wis. 2d at 766. Thus far, the test is much like the majority in *Garfole*. The court of appeals test, however, further limits the circuit court's admissibility determination:

> In determining whether to admit the "other acts" evidence offered by the defendant, the trial

court is not to make a preliminary finding that the other crime occurred. When considering the defendant's proffer, the trial court neither weighs credibility nor makes findings that the defendant has proven the occurrence of the other crime. *The court simply examines the defendant's entire proffer and decides whether the jury could reasonably find that the crime occurred.*

*The similarities and differences between the crimes are for the jury to weigh and do not serve as a barrier to admissibility.* Likewise, *the assertion by the State that the second victim is less than credible is not a barrier to admissibility*; the opinion of the truthfulness of a witness is not admissible into evidence. The jury is the arbiter of the weight and credibility of that witness's testimony.

*Scheidell*, 220 Wis. 2d at 770–71 (citations omitted; emphasis added). Under this test, the circuit court does not exercise discretion or act as a gatekeeper when evaluating the admissibility of evidence of other acts by an unknown third party proferred by the defendant. Rather, the court simply decides, based on the proffer, whether the jury could reasonably find that the other crime occurred. This is contrary to the discretion afforded circuit courts to rule on evidentiary matters. *Michael R.B. v. State*, 175 Wis. 2d 713, 723–25, 499 N.W.2d 641 (1993).

¶ 33. Admissibility of evidence is determined by the circuit court subject to the limitations of relevancy and adequacy of proof. Wis. Stat. § 901.04; *Michael R.B.*, 175 Wis. 2d at 723. Circuit courts exercise broad discretion with regard to the admissibility of evidence as long as the evidence tends to prove a material fact. Wis. Stat. §§ 904.01 and 904.02; *Michael R.B.*, 175 Wis. 2d at 723; *Denny*, 120 Wis. 2d at 623. "Material facts are those that are of consequence to the merits of the

300

litigation." *Michael R.B.*, 175 Wis. 2d at 724. "Relevancy, in turn, is a function of whether the evidence tends 'to make the existence of [a material fact] more probable or less probable than it would be without the evidence.' " *Id.* (quoting *Denny*, 120 Wis. 2d at 623). The proffered evidence must do more than "simply afford[ ] a possible ground of suspicion against another person," *Denny*, 120 Wis. 2d at 623, it must connect that person to the crime—either directly or inferentially, *Michael R.B.*, 175 Wis. 2d at 724–25.

¶ 34. The identity exception to other acts evidence, Wis. Stat. § 904.04(2), requires that "similarities [ ] exist between the 'other act' and the offense for which the defendant is being tried." *Fishnick*, 127 Wis. 2d at 263 (citation omitted). The threshold measure for similarity in the admission of other acts evidence with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged. *Id.* at 264 n.7 (quoting *Whitty*, 34 Wis. 2d at 294). Similarities which tend to identify a third party rather than the defendant as the proponent of an act also tend to ensure the probity of the other acts evidence. *See Fishnick*, 127 Wis. 2d at 263; *Boyer v. State*, 91 Wis. 2d 647, 660, 284 N.W.2d 30 (1979); *Sanford v. State*, 76 Wis. 2d 72, 79, 250 N.W.2d 348 (1977); *Whitty*, 34 Wis. 2d at 294.

¶ 35. These standards have been applied even when the defendant is the proponent of the evidence. In *State v. Oberlander*, 149 Wis. 2d 132, 136–38, 438 N.W.2d 580 (1989), the defendant sought to admit evidence that a named third-party had committed a similar act of arson and that the charged crime bore this other person's imprint. The circuit court excluded the other acts evidence holding that the evidence was irrelevant under Wis. Stat. § 904.04(2) and *Whitty*

because it was too remote and had no connection with the arson in the charged case. *Oberlander*, 149 Wis. 2d at 136–37, 144. This court affirmed the circuit court's decision, concluding that the circuit court based its decision on the proper facts and law governing the issue. *Id.* at 144.

¶ 36. In *State v. Walker*, 154 Wis. 2d 158, 164–65, 453 N.W.2d 127 (1990), the defendant attempted to admit evidence of an allegedly similar robbery committed by an unnamed third party while he was incarcerated pending his trial on the charged crimes. The circuit court excluded the evidence because of the dissimilarity in appearance between the perpetrator of that crime and the perpetrator of the crimes for which Walker was charged. *Id.* at 191–92. This court again affirmed the circuit court's determination based on the facts of the case and the relevant law. *Id.* at 192. The court of appeals' adoption of a modified *Garfole* test in this case does not account for the admissibility determination of the circuit court, or the court's application of the identity exception to evidence of third party other crimes introduced by the defendant which was approved in these decisions.

¶ 37. Even in *Denny*, where the defendant sought to introduce evidence establishing several other individuals' motives to commit the charged crime, he was required to show a direct connection between the charged crime and the other crime. Here, the defendant is seeking to introduce evidence of an allegedly similar crime committed by an unknown individual. Yet, the modified *Garfole* test apparently would not require the defendant to show any connection or similarity between the two crimes. *See Scheidell*, 220 Wis.

2d at 770–71. We decline to adopt this seemingly inconsistent result.

¶ 38. Moreover, the court of appeals' newly-established standard ignores the fact that nearly all evidence operates to the prejudice of the party against whom it is offered. *Christensen v. Economy Fire & Cas. Co.*, 77 Wis. 2d 50, 61–62, 252 N.W.2d 81 (1977); *State v. Johnson*, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994).[10] This includes prejudice to the state when evidence is offered by the defendant. The state has a significant interest in preserving orderly trials, in preventing undue diversion of the trial by injecting a collateral issue, and in avoiding unsupported jury speculation regarding the guilt of other suspects. *See Younger v. Harris*, 401 U.S. 37, 44 (1971); *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983). An additional concern is erroneous acquittals; a judge has no power "to assure that an acquittal is based on the proper legal standard: a reasonable doubt rather than a speculative one." David McCord, *The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty.*, 63 Tenn. L. Rev. 917, 976

---

[10] We do not dispute that when the defendant uses other acts evidence to create a doubt as to identity, *prejudice to the defendant* may not be as important of a consideration. *See Scheidell*, 220 Wis. 2d at 765. Clearly, the defendant is assuming the risk that the evidence will convince the jury that he or she is innocent of both the other act and of the charged crime. Nevertheless, we agree with the *Johnson* court, the standard for unfair prejudice is not whether the evidence harms the opposing party's case, but rather whether the evidence tends to influence the outcome of the case on an improper basis. *State v. Johnson*, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994); *see also Christensen v. Economy Fire & Cas. Co.*, 77 Wis. 2d 50, 61, n.11., 252 N.W.2d 81 (1977).

(1996). These state interests are not erased simply because the defendant proffers the evidence of other acts by an unknown third party.

¶ 39. For these reasons, we decline to adopt the court of appeals' modified *Garfole* test.[11] We recognize that the standards of relevancy are stricter when the state seeks to introduce other crimes evidence to prove identity because "the prejudice [resulting from such evidence] is apt to be relatively greater than the probative value." *Whitty*, 34 Wis. 2d at 294. When the state seeks to admit identity evidence of other crimes, it must show "such a concurrence of common features and so many points of similarity between the other acts and the crime charged that it can reasonably be said that the other acts and the present act constitute the imprint of the defendant." *Fishnick*, 127 Wis. 2d at 263–64.

¶ 40. While we do not believe that the defendant must establish that the two crimes are the "imprint" or "signature" of the third party, we nevertheless conclude that similarities between the other act evidence

---

[11] Some courts have chosen to follow *State v. Garfole*, 388 A.2d 587 (N.J. 1978). *See, e.g., United States v. Stevens*, 935 F.2d 1380, 1404–05 (3rd Cir. 1991), *People v. Bueno*, 626 P.2d 1167, 1169–70 (Colo. App. 1981), *Brown v. State*, 416 N.E.2d 828, 830 (Ind. 1981), *Commonwealth v. Jewett*, 467 N.E.2d 155, 158 (Mass. 1984). While others have not. *See, e.g., United States v. Perkins*, 937 F.2d 1397, 1400–01 (9th Cir. 1991), *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983), *Hinds v. State*, 469 N.E.2d 31, 38 (Ind. App. 1984), *People v. Logan*, 408 N.E.2d 1086, 1090 (Ill. App. 1980), *State v. Mosby*, 595 So. 2d 1135, 1138–39 (La. 1992), *Commonwealth v. Harris*, 479 N.E.2d 690, 693 (Mass. 1985), *State v. Jones*, 656 P.2d 1012, 1014 (Utah 1982).

and the charged crime must be shown.[12] This is particularly true in a case such as this where the allegedly similar crime was committed by an *unknown* individual. We agree with the court in North Carolina that to be admissible, such other acts evidence must do more than raise conjecture or speculation. *State v. Richardson*, 402 S.E.2d 401, 404 (N.C. 1991); *State v. Cotton*, 351 S.E.2d 277, 279 (N.C. 1987).

¶ 41. In Wisconsin, the threshold measure for similarity in the admission of other acts evidence with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged. *Sullivan*, 216 Wis. 2d at 786; *Fishnick*, 127 Wis. 2d at 264 n.7 (quoting *Whitty*, 34 Wis. 2d at 294). "The required degree of similarity between the other act and the charged offense and the required number of similar other acts cannot be formulated as a general rule." *Sullivan*, 216 Wis. 2d at 787. However, the greater the similarity, complexity and distinctiveness of the events, as well as the relative frequency of the event, the stronger the case for admission of the other acts evidence. *Id.*

¶ 42. Similarities which tend to identify a third party rather than the defendant as the perpetrator of an act also tend to ensure the probity of the other acts evidence. *See Fishnick*, 127 Wis. 2d at 263. We therefore conclude that when a defendant proffers other acts evidence committed by an unknown party on the issue

---

[12] Even courts that have adopted the *Garfole* test have compared the similarities and/or distinctiveness of the other crimes by a third party and the charged crime. *See People v. Flowers*, 644 P.2d 916, 920 (Colo. 1982)(concluding that the similar acts and circumstances taken together do not support a finding that the same person was probably involved in all the cases).

of identity, the court must balance the probity of the evidence, considering the similarities between the other act and the crime alleged, against the considerations contained in Wis. Stat. § 904.03, utilizing the *Whitty/Sullivan* framework. *See Sullivan*, 216 Wis. 2d at 772–73; *Whitty*, 34 Wis. 2d at 294–95.

V.

■

¶ 43. Here, the circuit court applied the legitimate tendency test of *Denny*, concluding that there was no showing of opportunity or direct connection between the two crimes. Yet the evidence was proffered as other acts evidence for the purposes of identity under Wis. Stat. § 904.04(2). Generally, the decision to admit or exclude relevant other crimes evidence is a discretionary function of the circuit court which this court will sustain if we find that the court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *Sullivan*, 216 Wis. 2d at 780–81; *Barrera*, 99 Wis. 2d at 279. However, the circuit court did not perform the balancing test for other acts evidence; thus, we independently review the evidence to determine whether it supports the circuit court's ruling to exclude it. *Johnson*, 184 Wis. 2d at 337. *See also Sullivan*, 216 Wis. 2d at 781.

¶ 44. We have determined that when the defendant proffers other acts evidence committed by an unknown party, courts should engage in the three-step analytical framework outlined in *Whitty* and *Sullivan*.

¶ 45. The first step in the analysis is to determine whether the other acts evidence is offered for a permissible purpose under Wis. Stat. § 904.04(2), such as to establish motive, opportunity, plan, knowledge, or identity. *Sullivan*, 216 Wis. 2d at 783. In his offer of

proof, Scheidell argued that the other acts evidence was related to identity, a permissible use of other acts evidence. We conclude that Scheidell met his burden to show that the other acts evidence was offered for a permissible purpose under step one of the three-step analysis.

¶ 46. We next consider the second step of the analysis: Is the other acts evidence relevant? In assessing relevance, the court must first determine whether the evidence relates to a fact or proposition that is of consequence to the determination of the action. *Sullivan*, 216 Wis. 2d at 785. The proponent of the evidence, here Scheidell, must articulate the fact or proposition that the evidence is offered to prove. *Id.* at 786. In this case, Jennifer immediately identified Scheidell as her attacker, and Scheidell denied the accusation. We conclude, and the parties do not dispute, that the identity of the attacker was of consequence to the case and that the other acts evidence was offered to prove Scheidell was mistakenly identified.

¶ 47. The second inquiry in assessing relevancy is the probative value of the evidence. Whether the evidence has a tendency to make a consequential fact more or less probable than it would be without the evidence determines the probative value of that evidence. *Sullivan*, 216 Wis. 2d at 786; *Richardson*, 210 Wis. 2d at 706–07.

¶ 48. The probative value of other acts evidence intended to prove identity depends upon its nearness in time, place, and circumstances to the alleged crime or to the fact or proposition sought to be proved. *Sullivan*, 216 Wis. 2d at 786; *Oberlander*, 149 Wis. 2d at 142–43. "[T]he probative value lies in the similarity between the other act and the charged offense." *Sullivan*, 216 Wis. 2d at 786. The greater the similarity, complexity

307

and distinctiveness of the events, as well as the relative frequency of the event, the stronger is the case for admission of the other acts evidence. *Id.* at 787–88.

¶ 49. Scheidell argues that there were many points of similarity between the other incident involving Kim C. and the charged crime involving Jennifer. Scheidell insists that the "accretion [of] the similarities add up to an ódds-defying *modus operandi*," such that evidence of the later offense should have been admitted. Scheidell points to the following similarities: both crimes took place within four blocks of each other; both were committed only five weeks apart; both occurred between 5:00–5:30 a.m.; in both cases a lower-story apartment window was a suspected point of entry; each victim was awakened in her bed to find a man armed with a knife straddling her; the assailant wore a mask and covered his head with a jacket or part of a jacket; the assailant was about 5'10", white, and slender; the assailant either attempted or completed the same crime: first-degree sexual assault; and the assailant chose similar victims: a single, young, white woman.

¶ 50. We agree that there are some similarities between the later offense and the charged crime—the location, the nearness in time between events, and the early-hour of the assaults. Even so, we do not agree that the two incidents are so distinctively similar as to support the inference that some unknown third party, and not Scheidell, committed the charged crime.

¶ 51. We note several significant deficiencies with Scheidell's comparison of the other acts evidence. Scheidell's evidence involves only one incident, not a series of incidents which increases the probability that the two incidents occurred by mere chance or coincidence. *Sullivan*, 216 Wis. 2d at 786–87. Also, the factual details of the two incidents were not particu-

larly complex or unusual—residential sexual assault committed at knife point in predawn hours by a white man who concealed his identity. *See, e.g., Commonwealth v. Harris,* 479 N.E.2d 690, 693 (Mass. 1985) (despite similar description of attackers, weapon, and threat to kill victim, the points of similarity were not particularly distinguishing or unique); *People v. Flowers,* 644 P.2d 916, 919–20 (Colo. 1982)(entry through back window, threat of knife, tying of victim's hands, sexual assault, and theft were common to most sexual assaults and not distinctive or unusual enough to represent signature of individual); and *People v. Johnson,* 405 N.Y.S.2d 538, 540–41 (N.Y. Sup. Ct. 1978)(similar description from victims, use of gun, and occurrence of both sexual assaults in parking facilities were not sufficiently unique to provide a basis for admitting collateral testimony concerning prior rape).

¶ 52. Equally significant is the difference between the two assaults. In the charged crime, it is unclear whether the assailant entered through an open window or through the front door; however, Jennifer awoke with a man, who was fully clothed, straddling her. In the other crime, the unknown assailant entered and exited through a broken window; and the assailant, who had taken off his pants, placed his hand on Kim's buttocks, lay on top of her back and legs, and assaulted her from behind.

¶ 53. The most distinguishing factor between the other crime and the charged crime, completely overlooked by Scheidell, was the significantly different behavior displayed by the two assailants toward their victims. In the other crime, the assailant never struck Kim, but he spoke directly to her, ordering her to stay down, verbally agreeing not to assault her anally, and asking her name. In the charged crime, the assailant

did not utter a word; however, he immediately and persistently struck Jennifer in the head and the face.

¶ 54. Based on the distinguishing circumstances of the two incidents, we conclude that the other acts evidence was not probative of (i.e., relevant to) Scheidell being identified as the assailant in the charged crime, and was therefore properly excluded by the circuit court. Because we conclude that the other acts evidence proffered by Scheidell is not probative of a permissible purpose under Wis. Stat. § 904.04(2), we need not address the third step—the prejudice prong—of the *Whitty/Sullivan* analysis.[13] *See Sullivan*, 216 Wis. 2d at 789.

## VI.

¶ 55. Having concluded that the other acts evidence Scheidell sought to admit was properly excluded by the circuit court because it was irrelevant, we will now summarize our holdings in this case. First, the circuit court determined that the third party other acts evidence was irrelevant and inadmissible under *Denny*. We do not agree that *Denny* applies to other acts evidence committed by an unknown third party. However, we also decline to adopt the modified *Garfole*

---

[13] Even if the evidence were relevant under the *Whitty/Sullivan* standard, a circuit court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay. Wis. Stat. § 904.03. Although the circuit court did not reach the question of potential confusion or undue delay caused by the introduction of testimony concerning identification in the other assault, we conclude that such testimony coupled with the State's rebuttal evidence would tend to confuse the issues in the single case before the jury and unduly delay the trial.

test adopted and applied by the court of appeals in its decision. Instead, we conclude that when a defendant proffers other acts evidence committed by an unknown third party, the court, following *Whitty* and *Sullivan*, must balance the probity of the evidence, considering the similarities between the other act and the crime alleged, against the considerations contained in Wis. Stat. § 904.03. Based on our independent review of the evidence under *Whitty* and *Sullivan*, we also conclude that the evidence was not relevant to the charged crime and was properly excluded by the circuit court.[14] Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 56. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). The defendant in the case at bar sought to introduce evidence to show that other crimes of a similar nature have been committed by some other person to cast doubt upon the identification of the defendant as the person who committed the crime charged. The defendant was attempting to use "other act" evidence to exonerate himself.

¶ 57. I agree with the majority opinion that the admissibility of this defensive use of other acts evidence is assessed using the three-step analytical framework set forth in *State v. Sullivan*, 216 Wis. 2d

---

[14] We may affirm a lower court's decision on different grounds than those relied upon by the lower court. *Koestler v. Pollard*, 162 Wis. 2d 797, 809 n.8, 471 N.W.2d 7 (1991), citing *Saenz v. Murphy*, 162 Wis. 2d 54, 57 n.2, 469 N.W.2d 611 (1991); *Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 217 (1973).

768, 771–72, 576 N.W.2d 30 (1998); 7 Daniel D. Blinka, *Wisconsin Practice: Evidence*, § 404.5, at 41 (Supp. 1999). Again, the *Sullivan* framework for assessing the admissibility of other-acts evidence is the following:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
>
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.
>
> (3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence?

¶ 58. The defendant satisfies the first step of the analysis. The defendant is seeking to introduce the other acts evidence for purposes of proving the identity of the perpetrator of the crime charged.

¶ 59. As to the second step, relevance and probative value of the other acts evidence for purposes of proving identity depends on the similarities and dissimilarities between the other act and the charged crime.

¶ 60. I agree with the majority opinion that a more stringent standard applies when the state seeks to introduce other acts evidence to prove the defendant's identity as the perpetrator of the crime charged[1] than when an accused seeks to introduce other acts evidence to cast doubt on the accused's identity as the perpetrator of the crime with which the accused is charged. In other words, a less stringent standard of similarity between the crime charged and the other act is applied when an accused proffers other acts evidence for purposes of exoneration. *See* Majority op. at 300, 304.

¶ 61. The majority opinion summarizes the points of similarity between the crime charged and the other act advanced by the defendant as the following:

> Both crimes took place within four blocks of each other; both were committed only five weeks apart; both occurred between 5:00–5:30 a.m.; in both cases a lower-story apartment window was a suspected point of entry; each victim was awakened in her bed to find a man armed with a knife straddling her; the assailant wore a mask and covered his head with a jacket or part of a jacket; the assailant was about 5'10", white, and slender; the assailant either attempted or completed the same crime; first-degree sexual assault; and the assailant chose similar victims: a single young, white woman.

Majority op. at 308. The majority then states that "we do not agree that the two incidents are so distinctively

---

[1] The state should meet a high standard for probative value, that is, show "a concurrence of common features and so many points of similarity between the other acts and the crime charged that it can reasonably be said that the other acts and the present act constitute the imprint of the defendant." *State v. Fishnick*, 127 Wis. 2d 247, 263–64, 378 N.W.2d 272 (1985)

similar as to support the inference that some unknown third party, and not Scheidell, committed the charged crime." Majority op. at 308.

¶ 62. Ironically, in prior cases involving the state's proffers of other acts evidence to prove the identity of an accused the similarities between the crime charged and the other acts have been fewer than the similarities the majority requires of the other acts evidence proffered in this case. *See, e.g., State v. Speer*, 176 Wis. 2d 1101, 1117, 501 N.W.2d 429 (1993) (state's evidence that defendant previously burglarized homes with "For Sale" signs in front during daylight hours admitted to prove identity in burglary case); *State v. Rutchik*, 116 Wis. 2d 61,70, 341 N.W.2d 639 (1984) (state's evidence that defendant previously burglarized a house while the occupants were at a funeral after reading of funerals in obituaries admitted to prove identity in burglary case); *Sanford v. State*, 76 Wis. 2d 72, 80–81, 250 N.W.2d 348 (1977) (state's evidence that defendant engaged in prior rape in a garage and used his jacket for the victim admitted to prove identity in rape case); *Hough v. State*, 70 Wis. 2d 807, 815, 235 N.W.2d 534 (1975) (state's evidence that defendant previously stated to 15-year-old girl his preference for virgins admitted to prove identity in rape case).

¶ 63. I agree with the court of appeals that the other act evidence proffered by the defendant in this case bears sufficient similarity to the crime with which the defendant was charged to be admissible.

¶ 64. As to the third step, the majority states it need not address the prejudice prong of the analysis because it concludes the other act evidence is inadmissible. Majority op. at 310. Nevertheless the majority in a footnote concludes that the probative value of the evidence is substantially outweighed by the danger of

confusion of issues and by undue delay of the trial. Majority op. at 305 n.12.

¶ 65. I have considered such factors as confusion of issues, misleading the jury, undue delay and waste of time. Evidence of a similar incident occurring while the defendant was in jail will not consume a great deal of time, mislead or confuse the jury, or cause undue delay. I conclude that the introduction of the other act evidence proffered by the defendant in this case would have resulted in nothing more than the ordinary prejudice to the state's case that will always result when a defendant exercises his or her constitutional right to present a defense.

¶ 66. The State has failed to prove that the circuit court's error in refusing to admit the other act evidence was harmless error.

¶ 67. For the reasons stated, I would affirm the decision of the court of appeals. Accordingly, I dissent.

¶ 68. I am authorized to state that justices WILLIAM A. BABLTICH and ANN WALSH BRADLEY join this dissent.