COURT OF APPEALS
DECISION
DATED AND FILED

March 3, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1742-CR**

Cir. Ct. No. **2017CF807**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL J. TATE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed.*

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Daniel J. Tate appeals from a judgment of conviction entered after a jury trial for first-degree intentional homicide, hiding a corpse, and operating a motor vehicle without the owner's consent. Tate claims that the circuit court improperly admitted other-acts evidence. We reject Tate's challenge, as the circuit court properly applied WIS. STAT. § 904.04(2)(a) (2017-18)[1] when it admitted this evidence. We affirm.

¶2      The State charged Tate with first-degree intentional homicide, contrary to WIS. STAT. § 940.01(1)(a), hiding a corpse as a party to a crime, contrary to WIS. STAT. § 940.11(2), and operating a motor vehicle without owner's consent as a party to a crime, contrary to WIS. STAT. § 943.23(2).

¶3      According to the criminal complaint, codefendant Jamari Cook stated that, on July 23, 2017, the victim, Olivia,[2] after meeting Tate online, picked up Tate and Cook and drove them to a Kenosha park by the lake. After Cook initially gave Tate and Olivia "space" when he saw them hugging, he looked over and saw Tate choking Oliva from behind, lifting her off the ground. Tate had Olivia in "a sort of a sleeper hold," and Olivia became motionless. Cook then saw Tate hold Olivia's head in the water with his hands with his knee on her back. Tate then tied an apron-like object around her neck and pulled. Cook and Tate placed Olivia's body into the trunk of her car, drove to Racine and disposed of her body in some bushes.

¶4      Prior to trial, Tate moved to admit evidence that Cook killed Olivia, which was unopposed by the State. The State moved to admit evidence from three

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] In accordance with WIS. STAT. RULE 809.86, we protect the privacy of crime victims by avoiding use of their full names. We afford the same privacy protections to the witnesses in this case, as do both parties.

of Tate's former girlfriends, S.W., S.R., and M.H., related to his interest in choking. Consistent with this manner of death, the motion referenced Cook's statement that he saw Tate choking Olivia before she became motionless. The State proffered the following testimony from S.W., S.R., and M.H.:

- S.W. told the police that when she dated Tate for approximately two months in the summer of 2015, Tate would place his hand around her neck and squeeze it when they had sex.

- S.R. told police that she dated Tate for approximately two weeks in January 2017. Tate told S.R. that "he like[d] to choke, bite, or scratch a woman while having sex with her." S.R. denied that Tate ever choked her during sex. S.R. said that when she teased Tate, he would become angry and tell her, "I want to choke the shit out of you."

- M.H. said that she dated Tate between 2013 and 2016. M.H. said that Tate discussed wanting to choke, pull hair, and ass-slap during sex but she did not allow him to choke her when he asked her to try it.

¶5 The State argued that the proffered evidence was "probative of intent, absence of mistake or accident and modus operandi." It further asserted that this evidence would be relevant to counter two potential defenses: (1) Olivia's death was an accident and done without Tate's intent or (2) Cook, not Tate, caused Olivia's death.

¶6 The circuit court determined that the evidence was relevant and admissible. The court reasoned that this evidence related to Tate's interest in choking "suggest[s] the possibility of a modus operandi, which in itself can tend to prove identity." This was "particularly true" given that Tate sought to show Cook

3

was responsible for the choking. The circuit court determined that Tate's "history of engaging in asphyxiating behavior makes it more probable that he would be the likely actor than someone who has no demonstrated interest in that." The court also determined that the prejudice from this evidence did not outweigh its probative value.

¶7 The evidence at trial was consistent with, and expounded upon, the information provided in the complaint and the motion to admit the proffered testimony of Tate's three former girlfriends.

¶8 A forensic pathologist offered detailed testimony supporting his conclusion that Olivia died from manual strangulation. Cook testified that Tate told Cook that he was going to hang out with a girl who he had met and been messaging with online. Olivia picked up Tate and Cook and drove them to a Kenosha park by the lake.

¶9 Cook testified that he gave Tate and Olivia space after they all exited her car, explaining that he walked more than ten feet away from them and listened to music on his phone. After several minutes, Cook looked back at them and saw Tate holding Olivia in a headlock, choking her from behind with his right arm under her chin. Tate then held Olivia in water using his hands and knees to press her head into the water, and then wrapped a piece of cloth around Olivia's neck and pulled on it. Cook helped Tate place Olivia into the trunk of her car, and they disposed of her body together after Tate placed plastic bags over her feet and her head.

¶10 Tate's primary defense at trial was that Cook was responsible for Olivia's death.

¶11 S.W. testified that she dated Tate in 2015 when she was fifteen years old. She said that Tate strangled or choked her when they had sex by placing his hand on her neck and squeezing it. S.W. said that Tate put his hand on her neck that way approximately ten times, and that at times, she had trouble breathing. Tate did not ask her beforehand whether he could choke her to that extent.

¶12 The circuit court provided a cautionary instruction during S.W.'s testimony:

> Folks, you are hearing evidence about something that is not an incident for which the defendant is now on trial. He is not accused of any wrongdoing arising out of this, but it is being admitted for a limited purpose, and that is to show whether the defendant had a modus operandi in dealing with others of strangulation, and it is not to be taken as evidence that he's got a character trait or a bad character and that he acted in conformity with that trait on this occasion. It is merely to allow you to use the evidence to determine whether or not the defendant would customarily employ this technique with another, and it's limited to that use. Any question about this at all?

¶13 M.H. testified that she began having sex with Tate in 2013. When they had sex, Tate placed his hand or hands on her neck which restricted her breathing. This happened less than ten times. M.H. acknowledged that she told the police that she did not allow "Tate to choke [her] during sex even though he had asked [her] if he could try it." She testified that she was nervous and afraid to tell anyone that Tate had choked her when she gave her statement to the police.

¶14 The circuit court also provided a cautionary instruction during M.H.'s testimony: "[T]his is evidence admitted for the same purpose, and once again, I caution you it is not to be used to conclude that the defendant is, nor has a bad character or trait of character and for that reason is guilty of the charge now made against him."

5

¶15     S.R. testified that she and Tate had a girlfriend-boyfriend relationship in January 2017.  S.R. said that Tate never choked her.  S.R. stated that Tate talked about "how he would like to choke, bite and scratch a woman while he was having sex."  Tate threatened to "choke the shit out of [S.R.]" when he became angry with her.

¶16     On appeal, Tate argues that evidence involving these other women served only to prove Tate's bad character and that he acted in conformity with that character in this case.  Tate also argues that the evidence was irrelevant because, he contends, whether he previously choked other women sheds no light on the incident involving Olivia.  Tate contends that any minimal probative value of the other-acts evidence was substantially outweighed by the danger of the unfair prejudice arising from the jury speculating that Tate killed Olivia; and by the possibility that the evidence might provoke the jury's instinct to punish Tate for his past acts.  We are not persuaded.

¶17     "The applicable standard for reviewing a circuit court's admission of other-acts evidence is whether the court exercised appropriate discretion."  *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998).  We will uphold its evidentiary ruling if the court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach."  *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.  When the record contains a reasonable basis for the circuit court's ruling, we will not find an erroneous exercise of discretion.  *State v. Hammer*, 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629; *Sullivan*, 216 Wis. 2d at 780-81.

¶18     The parties agree that the proper analysis related to the admissibility of the other-acts evidence is under *Sullivan*.  *Sullivan* holds that in considering the

admissibility of other-acts evidence, a court considers whether (1) the evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) the evidence is relevant under WIS. STAT. § 904.01; and (3) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the jury, or needless delay under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73.

¶19 The proponent of the evidence bears the burden of showing by a preponderance of the evidence that it is relevant and admissible for a proper purpose. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. If the proponent satisfies this burden, the burden shifts to the opponent of the evidence to demonstrate that any unfair prejudice substantially outweighs its probative value. *Id.*

¶20 WISCONSIN STAT. § 904.04(2)(a) provides that

> evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶21 The circuit court concluded that the other-acts evidence would be admissible in the trial related to Olivia's death. The court determined that the evidence demonstrated a modus operandi by Tate which can aid in establishing identity and explicitly instructed the jury before closing arguments that it could consider the evidence only as it related to the issues of motive, identity, and intent. This ruling was one that a reasonable judge could make.

¶22 First, the other-acts evidence was properly admitted to show that Tate intended to kill Olivia and that he did not cause her death by mistake or accident. The State had to prove that Tate caused Olivia's death with intent to kill her. *See* WIS. STAT. § 940.01. Although Tate's defense was that Cook killed Olivia, the State not only had to prove that Tate was responsible, but that he either had the mental purpose to take Olivia's life or acted with the awareness that his conduct was practically certain to cause her death. *See* WIS. STAT. § 939.23(4).

¶23 Tate's acts of choking S.W.'s and M.H.'s necks in a manner that prevented them from breathing was admissible to show his intent, undermining any claim that it was an accident. Namely, the jury could infer from Tate's past acts of choking S.W. and M.H. on numerous occasions until their breathing was restricted that he knew how to restrict another's breath and what the impact is, depending on how hard and long the chokehold lasts. The jury could infer that in this instance, when, as described by Cook, he had her in a chokehold from behind until she went limp, he knew what he was doing, such that it was not an accident: he was aware that placing his arm across Olivia's neck for an extended time period was practically certain to cause her death.

¶24 The identity of who killed Olivia was also an element the State had to prove at trial. The State sought to admit the other-acts evidence to establish Tate's identity as the person responsible for Olivia's death and undermine Tate's defense that Cook was responsible for her strangulation.

¶25 Where, as here, there is significant similarity between the incident at issue in the case before the court and the other-acts incidents, evidence is admissible to prove mode or method of operation through which the identity of an assailant may be proved, modus operandi. *See **Hammer***, 236 Wis. 2d 686, ¶¶24, 26. Whether

8

there is a concurrence of common features is generally left to the sound discretion of the circuit court.

¶26    Here, the circumstances related to Tate's history of choking and strangulation and his interactions with Olivia and his former girlfriends have sufficient common features to evidence a modus operandi.  The circuit court determined that Tate's interest in strangulation was "uncommon enough" and suggested "the possibility of modus operandi, which in itself can tend to prove identity."  The court recognized that the interest in choking during sexual encounters is engaged in by a limited number of people.  We agree.

¶27    The circuit court also appropriately observed that the other-acts evidence was probative of identity when there was no evidence that Cook, the target of Tate's defense, had engaged in strangulation.

¶28    The circuit court properly exercised its discretion when it determined the other-acts evidence was admissible for proper purposes, including proof of Tate's intent to take Olivia's life and proof of Tate's identity as the person who killed her.

¶29    On the second point of the *Sullivan* analysis—whether the evidence is relevant—we conclude that it is.  Evidence is relevant "if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value."  *Hammer*, 236 Wis. 2d 686, ¶30.  Courts assess probative value in part based on the similarity of the charged offense to the other acts in terms of nearness of time, place, and circumstance.  *Id.*, ¶31; *State v. Gray*, 225 Wis. 2d 39, 38, 590 N.W.2d 918 (1999) ("The measure of probative value in assessing relevance is the similarity between the charged offense and the other act.").  As explained above, the other-acts evidence is relevant for establishing Tate's intent to kill Olivia

and his identity as the killer, two facts of consequence to the determination of the charges against him, and, as suggested above, was probative of these two facts.

¶30    The nearness in time, place, and circumstance of the other-acts evidence involving S.W., M.H., and S.R. made this evidence probative. *See Hammer*, 236 Wis. 2d 686, ¶31. The other acts were near in time, occurring within four years of Olivia's death, between 2013 and 2017. The other acts were also near in place. Olivia, like at least two of the women, S.R. and M.H., was from the Kenosha area.

¶31    In terms of similarity of circumstances, Tate choked S.W. and M.H. when having sex and he told S.R. about his interest in choking women while having sex. Tate's interest in choking women during sexual encounters made it more likely that he intended to choke Olivia. Tate also made threats to choke when angry, threatening to "choke the shit out of [S.R.]" when he became angry with her.

¶32    We find the probative value of the other-acts evidence to be substantial. *See Sullivan*, 216 Wis. 2d at 786. As our supreme court has explained:

> Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the probative value lies in the similarity between the other act and the charged offense. The stronger the similarity between the other acts and the charged offense, the greater will be the probability that the like result was not repeated by mere chance or coincidence.

*Id.* at 786-87.

¶33    The circuit court properly determined that the other acts were relevant and probative. The identity of who killed Olivia and whether the killer had the requisite intent were facts of consequence to a determination of Tate's case.

¶34    Tate argues that the differences were substantial, rendering them irrelevant to an attempt to prove identity. Specifically, he points out that he did not injure any of his former girlfriends, and he and Olivia did not have sex. As the circuit court aptly noted, Tate, through his communication with Olivia online referencing sex and spending the night together "made no bones that he was interested in a sexual interlude with [Olivia] on the night in question." Indeed, before their meeting, Tate asked Olivia if they were going to have sex the night they met and then told her that he would "be getting freaky, lol." Tate's attempt to downplay the difference in outcome ignores that he did choke to the point of taking his girlfriends' breaths away, with no apparent advance request to do so.

¶35    Moreover, to the extent that there are differences, such as the evidence indicating that Tate held Olivia's head in the water and used a cloth to choke her, and that Olivia's death took place in a public space, these are proper subjects for cross-examination—the central interest in strangulation during sexual encounters bears commonality with the cause of Olivia's death. Vigorous cross-examination helps limit the danger of unfair prejudice, insofar as it gives a defendant the opportunity to try and undermine the identity connection.[3]

¶36    On the third *Sullivan* point, Tate bore the burden before the circuit court "to show that the probative value of the [other-acts] evidence is *substantially*

---

[3] Tate argues that *State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999) supports his challenge. We disagree. In *Scheidell*, the supreme court denied admission of evidence that an unknown person who wore a hood and white mask entered a woman's apartment through a window to sexually assault her using a knife; acts the defendant argued were close in time, place, and circumstance to the sexual assault of the victim. *Id.* at 291. Here, unlike in *Scheidell*, the known individual had engaged in the uncommon act of choking and professed an interest in doing so with three former girlfriends. The other-acts evidence here was also relevant to Tate's attempt to identify Cook as the perpetrator. More importantly, the evidence here is relevant to intent, absence of mistake, or accident, which were not at issue in *Scheidell*.

*outweighed* by the risk or danger of unfair prejudice." *See Marinez*, 331 Wis. 2d 568, ¶19 (emphasis added). He failed to meet this burden.

¶37 Prejudice, in this context, is not defined by harm to the opposing party's case but, rather, whether the evidence tends to influence the outcome of the case by "improper means." *State v. Payano*, 2009 WI 86, ¶87, 320 Wis. 2d 348, 768 N.W.2d 832 (citation omitted). Because WIS. STAT. § 904.03 "provides for exclusion only if the evidence's probative value is *substantially outweighed* by the danger of unfair prejudice, '[t]he bias, then, is squarely on the side of admissibility. Close cases should be resolved in favor of admission.'" *Marinez*, 331 Wis. 2d 568, ¶41 (citing 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 403.1, at 139 (3d ed. 2008)).

¶38 Here, as discussed above, the nearness in time, place, and circumstance rendered the other-acts evidence highly probative. While Tate suggests that the other-acts evidence played upon the "jurors' sensibilities" relating to morality and that the other-acts evidence related to his "kinks and sexual preferences," which cast him in an unfavorable light, the jury was told that the other-acts evidence was to be considered only in terms of Tate's intent and modus operandi, and not to show that he was guilty of Olivia's death because he had a bad character. The record does not evidence any attempt by the prosecution to exploit the other-acts evidence to provoke the jurors' instincts to punish or base their decisions on something other than the established propositions in the case, including guilt beyond a reasonable doubt. While the evidence is prejudicial because it is probative, Tate has not met his burden to show that the probative value was "substantially outweighed" by unfair or improper prejudice. *See Hunt*, 263 Wis. 2d 1, ¶53.

12

¶39 As detailed above, the court appropriately gave limiting instructions during S.W.'s and M.H.'s testimony. Limiting or cautionary instructions may "substantially mitigate" or even "eliminate the potential for unfair prejudice" that might otherwise result from the admission of other-acts evidence. *State v. Hurley*, 2015 WI 35, ¶89, 361 Wis. 2d 529, 861 N.W.2d 174 (and cases cited therein). The court instructed the jury that the evidence was being admitted for the "limited purpose" of showing "whether the defendant had a modus operandi in dealing with others of strangulation," and cautioned the jury not to conclude that Tate had a "character trait or bad character" or that he "acted in conformity with that trait."

¶40 The circuit court also provided a detailed cautionary instruction before the parties' closing arguments. The court instructed the jurors they could only consider evidence of Tate's past employment of "strangulation techniques during sexual interludes" on "the issues of motive, identity and intent," and explained the three concepts of motive, identity, and intent to the jury. The circuit court reiterated that the jury could not use the other-acts evidence to conclude that Tate had a certain character or character trait and that he acted in conformity with that trait or that Tate was "a bad person and for that reason is guilty of the crime." Juries are presumed to comply with properly given cautionary instructions. *Marinez*, 331 Wis. 2d 568, ¶41.

¶41 Here, the significant similarity between the evidence related to Olivia's death and that related to Tate's former girlfriends tended to show that Tate had an interest in strangulation with females associated with sex or when he was angry. The evidence tended to show that "the like result"—the strangulation of Olivia—"was not repeated by mere chance or coincidence." *See Sullivan*, 216 Wis. 2d at 786-87. The evidence supported the State's theory that Olivia's death was not accidental and that Tate killed her intentionally.

13

¶42    In sum, the circuit court admitted the evidence for proper purposes, including intent, absence of mistake or accident, and modus operandi leading to identity.  The evidence was relevant because it related to facts of consequence in Tate's trial and it had probative value.  The evidence was not unduly prejudicial.  The other-acts ruling was a proper exercise of discretion.  We reject Tate's challenge to the admission of the other-acts evidence and affirm the judgment of conviction.[4]

*By the Court*.—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Given our decision that the other-acts evidence was properly admitted, we need not reach the harmless error argument furthered by the State. *See **Lake Delavan Prop. Co. v. City of Delavan***, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (when one appellate issue is dispositive, we need not address other issues).