STATE of Wisconsin, Plaintiff-Appellant,†

v.

Terry G. VOLLBRECHT, Defendant-Respondent.

Court of Appeals

*No. 2011AP425. Submitted on briefs March 15, 2012.*
*—Decided July 25, 2012.*

2012 WI App 90

(Also reported in 820 N.W.2d 443.)

† Petition for Review denied 11-14-12.

69

70

72

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Marguerite M. Moeller*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Keith A. Findley* and *Ion B. Meyn* of *the Wisconsin Innocence Project*, Madison, and *Stephen P. Hurley* and *Erik R. Guenther* of *Hurley, Burish & Stanton S.C.*, Madison.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J. Terry Vollbrecht was convicted in 1989 of the first-degree sexual assault and murder of Angela Hackl. Hackl had been found in a wooded area, naked and hanging from a tree by tire chains; she had been shot three times in the back. Vollbrecht was the last person seen with Hackl and was convicted on circumstantial evidence. Twenty years later, Vollbrecht filed a Wis. Stat. § 974.06 (2009–10)[1] motion for a new trial based on newly discovered evidence. Vollbrecht alleged that, at the time of his trial, the State failed to provide the defense with evidence of a third-party perpetrator. The alleged third-party perpetrator, Kim Brown, confessed to and was convicted of a similar killing in an adjacent county only six weeks after Hackl's murder. Like Hackl, Brown's victim was found in a secluded wooded area, partially clothed, bound and shot in the back. Brown confessed to having chained his victim to a tree by her neck.

¶ 2. The State challenges the postconviction court order granting Vollbrecht's request for a new trial based on newly discovered evidence that points to Brown as Hackl's killer. The State contends that Vollbrecht failed to demonstrate diligence in filing the Wis. Stat. § 974.06 motion following discovery of the new evidence. The State further contends that the postconviction court

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

erred in its determination that Vollbrecht met the test for obtaining a new trial based on newly discovered evidence. We reject the State's challenges. We affirm.

## BACKGROUND

¶ 3. This is the third time Vollbrecht is before this court on appeal.[2] The evidence adduced at Vollbrecht's trial has been previously summarized by this court as follows. Police officers found Hackl's body in a wooded area known as The Pines near Sauk City on June 15, 1987. Her nude body was hanging from a tree with a tire chain around her neck. An autopsy revealed that Hackl had died of three gunshot wounds to her back. The bullets had been fired from a .22 caliber weapon. At the crime scene, police also observed a red sleeping bag among the pine trees, several pieces of ripped clothing later identified as belonging to Hackl, tire tracks, a cross-member from the undercarriage of a vehicle and a patch of ground that appeared to have been overturned by a dragging automobile undercarriage.

¶ 4. Hackl's father reported her missing on June 13 and, on June 14, Vollbrecht voluntarily informed a Sauk county detective that he had been with Hackl during the early morning hours on June 12. After Hackl's body was discovered, Vollbrecht became a suspect in the murder investigation. He cooperated with investigators, providing them with statements and samples when requested.

---

[2] Vollbrecht's first appeal challenged certain evidentiary rulings made by the trial court. *State v. Vollbrecht*, No. 1990AP1824, unpublished slip op. (WI App May 9, 1991). Vollbrecht later appealed from a denial of a WIS. STAT. § 974.06 motion for postconviction relief based on ineffective assistance of counsel. *State v. Vollbrecht*, No. 1992AP1934, unpublished slip op. (WI App Mar. 9, 1993). Both appeals were unsuccessful.

¶ 5. According to Vollbrecht, he met Hackl at a bar where she had been drinking with friends. After the bar closed, Hackl and Vollbrecht left the bar in a car belonging to Hackl's boyfriend, Ron Lewis. They drove to a marshy area near the Wisconsin River[3] and engaged in consensual sexual intercourse on a sleeping bag that was in the car. Afterwards, Hackl drove Vollbrecht to downtown Sauk City and dropped him off near his vehicle. Vollbrecht estimated that she dropped him off between 3:00 a.m. and 3:30 a.m. He also mentioned that he had tried to open the car's glove compartment to look for matches, but it was locked.

¶ 6. Lewis discovered his car parked along a highway near The Pines with the doors unlocked and the driver's side window rolled down. He could not find the car keys. He looked through the car and noticed that the .22 caliber revolver and holster that he had left in the glove compartment were missing. The car's crossmember, which supported the transmission, was missing. The tire tracks at the crime scene were consistent with the size and tread surface design of the tires on Lewis' car. Norbert Bloedow, who had sold the car to Lewis several months earlier, told investigators that when he sold the car to Lewis, a spare tire and a set of tire chains were in the trunk. Investigators recovered more of Hackl's clothing, her purse and a pubic hair from the car's interior. One rusty tire chain was recovered from the trunk. A woman later discovered Lewis' missing holster near the area where Hackl's body was found. The murder weapon, presumed to be Lewis' missing revolver, was never recovered.

---

[3] This marshy area is not the same area as The Pines where Hackl's body was found.

¶ 7. Detectives spoke with several people who knew Vollbrecht and were in the area between 2:30 a.m. and 4:00 a.m. on June 12 where he claims Hackl dropped him off. None of these people saw Vollbrecht in the area. Detectives also interviewed a witness who identified Vollbrecht in a photo lineup as the person the witness saw on June 13 near the area where Hackl's body was later found. Vollbrecht's hair stylist told detectives that while she was cutting his hair, Vollbrecht kept bringing up the Hackl murder investigation and told her, "I didn't do it and if I did, I don't remember doing it," or similar words.

¶ 8. On February 13, 1989, a criminal complaint was filed charging Vollbrecht with one count of first-degree murder and one count of first-degree sexual assault, with use of a dangerous weapon as a penalty enhancer. Later that month, Robert Wagner informed police that he lived near the area where Hackl's body was found. Wagner said that he had been fly fishing with friends the night of the murder and returned home around 1:30 a.m. and laid down on the couch. Before he headed upstairs for the night, he glanced at the VCR clock, and remembered seeing "2:33" a.m. At approximately 2:50 a.m., he woke up and heard three shots that sounded like firecrackers. He then heard a car making dragging and clanging noises driving slowly down the road. The car stopped and after about twenty minutes, it started up again and drove down the road in the opposite direction. Wagner's testimony was critical in establishing that Hackl was murdered before 3:30 a.m., the time at which Vollbrecht estimated he parted with her.

¶ 9. After a lengthy trial, the jury convicted Vollbrecht of one count of first-degree murder and one count of first-degree sexual assault with use of a dan-

gerous weapon. Because there were no witnesses to the murder and there was no physical evidence directly linking Vollbrecht to the murder or the murder scene, he was convicted on circumstantial evidence. Vollbrecht unsuccessfully appealed his conviction in 1991. He then filed a WIS. STAT. § 974.06 motion alleging ineffective assistance of counsel. Again, he was unsuccessful.

¶ 10. This brings us to the proceedings underlying the current appeal. On July 22, 2009, Vollbrecht filed a WIS. STAT. § 974.06 motion for a new trial based on newly discovered evidence and the State's violation of its duty to disclose material exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).[4] Vollbrecht asserted that prior to his trial he attempted to identify alternate suspects, including Kim Brown.[5] By the time of Vollbrecht's trial in 1989, Brown had confessed to and was serving time for the murder of Linda

---

[4] On May 3, 2010, Vollbrecht filed an amended motion for a new trial setting forth in greater detail the newly discovered evidence. While the State argues that Vollbrecht's delay in bringing this postconviction motion was unreasonable, it does not challenge the postconviction court's determination that the newly discovered evidence was not provided to Vollbrecht prior to his first WIS. STAT. § 974.06 motion.

[5] Vollbrecht also identified Tom Perschy as a potential alternate suspect considered at the time of his trial. Perschy was a Sauk county police officer with an alleged reputation for sexually inappropriate conduct who was present in downtown Sauk City the night Hackl disappeared. However, the circuit court found the newly discovered evidence pertaining to Perschy to be "incredible as a matter of law." Thus, the court rejected Vollbrecht's contention that Perschy presented another potential known third-party perpetrator and, as a result, found that the undisclosed evidence related to Perschy could not have been material to Vollbrecht's defense. Vollbrecht does not challenge the circuit court's ruling on appeal.

Nachreiner. The Nachreiner murder occurred six weeks after Hackl's murder, in a wooded area in adjacent Adams county. Like Hackl, Nachreiner was found partially clothed; she had been chained to a tree and shot from behind. However, prior to Vollbrecht's trial, the defense had been misinformed by state law enforcement that Brown had been at work at the time of Hackl's murder.[6] The defense investigator on Vollbrecht's case averred that once they received this information, they "abandoned any attempts to link Kim Brown to the crime." As a result, the defense was limited to arguing that the State's circumstantial evidence was insufficient.

¶ 11. In support of his motion for a new trial, Vollbrecht alleged that new evidence had emerged that supported his longstanding claim of innocence and the alternative hypothesis that Brown committed the offense. The new evidence stemmed from posttrial discovery of police reports (primarily Adams county investigation reports related to the Nachreiner homicide) allegedly implicating Brown that were never turned over to the defense prior to trial. These reports, previously undisclosed by the State, included (1) information that a search of Brown's residence uncovered a revolver and books involving rape, chains and torture[7]; (2) notes

---

[6] After trial, Vollbrecht learned that Brown had not been at work on the night of Hackl's murder. Brown's work record in the Adam's County Sheriff's Department file, compiled in relation to Nachreiner's murder, indicates that Brown left work at 5:00 p.m. on June 11, 1987, and returned to work the following morning at 7:00 a.m.

[7] The search warrant report indicated books entitled, The Chained and Raped Wife, Raped and Kidnapped Bride, History of Torture, The Captive Debutante, The French Mistress and Case of the Karate Sex Killer.

from the interviews of two of Brown's coworkers indicating that sometime in the winter or early spring of 1987, Brown had said to one coworker that "it would be a good time to get some girls, tie them up, abuse them and then get rid of them"; (3) affidavits of Brown's fellow inmates, dated November 1987, that Brown had made incriminating statements about liking to chain and burn women.[8] The inmates, William Hoeffler and Frances Lawver, were housed with Brown in September 1987 while he was in jail for the rape and murder of Nachreiner.

¶ 12. This information led to additional defense investigation that uncovered new evidence, including statements from two more of Brown's fellow inmates that Brown had confessed to Hackl's murder. The other two inmates, Norman Pepin and James Shultz were housed with Brown at the Columbia Correctional Institution in the 1990s. Vollbrecht also cited postconviction DNA evidence indicating the presence of semen and blood from other unknown males on a red sleeping bag found next to Hackl's body.[9] In addition to his Wis. Stat.

---

[8] Vollbrecht argued that this was significant because Hackl's body was found hanging in a tree by a chain looped around her neck with brush piled around her. A disposable lighter was found near her body. The prosecutor noted at trial, "If you put a match to that, you would have a human sacrifice."

[9] Vollbrecht maintained at trial that he had engaged in consensual intercourse with Hackl on a sleeping bag taken from Lewis' vehicle. The State represented to the jury that Vollbrecht was not telling the truth about having consensual intercourse and that no semen stains were present on the sleeping bag or on vaginal swabs taken from Hackl's body. In his Wis. Stat. § 974.06 motion, Vollbrecht argued that the DNA evidence indicating the presence of an unknown third-party's blood and semen on the sleeping bag (1) supported the theory that

§ 974.06 motion, Vollbrecht requested a new trial in the interest of justice under WIS. STAT. § 805.15(1) and the court's inherent authority.

¶ 13. The parties agreed that the matter warranted an evidentiary hearing. After eight days of testimony and briefing by the parties, the postconviction court issued a detailed written decision granting Vollbrecht's motion for a new trial. The postconviction court first rejected the State's contention that Vollbrecht's WIS. STAT. § 974.06 motion was barred for failing to timely raise his claims. As to Vollbrecht's *Brady* violation claim, the postconviction court determined that the State had failed to disclose exculpatory evidence and most of that undisclosed evidence was favorable to the defense. However, the court further determined that the evidence was not sufficiently material to a determination of Vollbrecht's guilt.

¶ 14. Instead, the court based its decision on the newly discovered evidence. The court determined that the evidence was discovered after Vollbrecht's conviction; Vollbrecht had not been negligent in seeking most of the evidence[10]; all of the evidence related to Brown is

someone other than Vollbrecht raped and murdered Hackl and (2) rebutted the State's assertion that the sleeping bag was so filthy it would not have been used for consensual sex.

[10] The court did determine that Vollbrecht was negligent in seeking evidence related to the books recovered from Brown's residence and in seeking a statement from Robert Wagner's wife, Mary Wagner. Robert's testimony at Vollbrecht's trial had been critical to establishing that Hackl's murder occurred sometime prior to 3:30 a.m. As to the books, the postconviction court found that Vollbrecht's trial attorney had been in possession of the Nachreiner warrant return and, therefore, counsel had access to the titles of the books and could have obtained

material to an issue in the case, specifically to the identity of the person who murdered Hackl, and was not cumulative to other evidence presented in the case.

¶ 15. The court summarized the surviving newly discovered evidence[11] as:

> The work record of Brown and the associated report of Donna Davis, which indicated that Brown was not working on the night that Hackl was murdered.
>
> The testimony, affidavit, and journal of Hoeffler where Brown spoke about liking to chain women to a tree, light them on fire, and shoot them.

them. As to Mary, she testified that the VCR clock never set properly and was covered with a doily and that Robert was using drugs during the period of June 12, 1987, until he contacted law enforcement in February 1989. Although Mary did not come forward with information regarding the VCR and drug use until February 2010, the circuit court found that Vollbrecht failed to prove by clear and convincing evidence that he was not negligent in failing to obtain a statement from her at the time of his trial in 1989.

The postconviction court also excluded the statements of Brown's coworkers because the coworker to whom Brown had made the incriminating statement, Lee McQueen, was deceased and the other coworkers' statements as to what Brown had said would be inadmissible hearsay.

Vollbrecht challenges the court's exclusion of both Mary's testimony and the statement made to Lee McQueen prior to Hackl's murder. Because we uphold the postconviction court's grant of a new trial, we need not address these rulings.

[11] The first five items were also identified by Vollbrecht as *Brady* evidence and found by the postconviction court to have been in the exclusive control of the State at the time of trial and not disclosed to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). However, as noted, the postconviction court did not find the *Brady* evidence itself to be sufficiently material.

The testimony and 1987 affidavit of Lawver that Brown stated he liked to chain up women and when he was done with them, burn them.

The statements in the Brown presentence investigation report (PSI) in which he discusses how Brown chained Nachreiner to a tree before he shot her.[12]

The Division of Criminal Investigation (DCI) report that stated that there did not appear to be any similarities between the Nachreiner and Hackl homicides which would tie the two homicides to one suspect.[13]

Pepin's testimony that Brown informed him in 1993 that he killed Hackl by shooting her three times, and then hanging her in a tree with a tire chain at "the Pines" in Sauk City.

Schultz's testimony that sometime around 1992, he overheard Brown tell another inmate that he raped, shot, and tied Hackl to a tree, put brush around her and was going to light her up and the lighter failed and he just threw the lighter away.

---

[12] It was not until June 2010, after the postconviction evidentiary hearings had commenced, that Vollbrecht moved for the release of the PSI prepared prior to sentencing in the Nachreiner case. Vollbrecht's request was granted and the PSI information was subsequently considered as newly discovered evidence.

[13] The DCI of the State Department of Justice became involved in the Hackl homicide investigation in August 1987 partially because of its possible relationship to the Nachreiner homicide. The DCI report on the Hackl investigation, compiled in February 1989, summarized the investigation to date. It stated: "Many other possible suspects were looked at and subsequently eliminated . . . . It was determined that the Nachreiner and Blackstone homicides were not connected with the Hackl investigation." Vollbrecht argues that the DCI unfairly targeted Vollbrecht and vigorously and prematurely excluded viable suspects, including Brown.

The DNA evidence that an unknown third-party's semen was found on the sleeping bag and on the vaginal swab taken from Hackl's body.

In granting Vollbrecht's request, the court stated:

The Court has considered all of the evidence presented at Vollbrecht's trial, and the evidence adduced at the most recent, lengthy post-conviction motion hearing, including the demeanor of all of the witnesses at that hearing. The Court finds there is a reasonable probability that after a jury considered all of the evidence presented at Vollbrecht's trial and the newly discovered evidence regarding the evidence of Brown's specific and distinct motive—to fasten women to trees with a chain, to shoot them, and to burn them—and Brown's alleged confessions to the Hackl homicide, it would have a reasonable doubt that Vollbrecht is guilty . . . .

[T]he addition of this newly discovered evidence undermines the confidence in the jury's guilty verdict at trial. Therefore, the Court grants [Vollbrecht] a new trial on the grounds of newly discovered evidence.

¶ 16. The State appeals.

## DISCUSSION

¶ 17. The State contends that the postconviction court erred in its determination that Vollbrecht is entitled to a new trial. The State contends both that Vollbrecht was not sufficiently diligent in pursuing the newly discovered evidence and that this evidence is inadmissible because it fails to satisfy the opportunity requirement set forth in *State v. Denny*, 120 Wis. 2d 614, 624–25, 357 N.W.2d 12 (Ct. App. 1984). As a catchall, the State maintains that the newly discovered evidence does not create a reasonable probability of an acquittal on retrial. We reject the State's arguments and

84

uphold the postconviction court's rulings. At the outset, we observe that the parties parse out the issues on appeal—addressing the newly discovered evidence, third-party perpetrator (*Denny*) evidence and the alleged *Brady* violation as if disconnected. However, the overarching issue is that of newly discovered evidence, under which all other issues on appeal are subsumed. We therefore examine it as such.[14]

*Standard of Review*

¶ 18. A defendant seeking a new trial on the basis of newly discovered evidence must establish, by clear and convincing evidence, that (1) the evidence was discovered after conviction, (2) the defendant was not negligent in seeking to discover it, (3) the evidence is material to an issue in the case, and (4) the evidence is not merely cumulative. *State v. Plude*, 2008 WI 58, ¶ 32, 310 Wis. 2d 28, 750 N.W.2d 42; *State v. Love*, 2005 WI 116, ¶ 43, 284 Wis. 2d 111, 700 N.W.2d 62. We review the postconviction court's decision on whether to grant a new trial based on newly discovered evidence

---

[14] While we acknowledge the State's argument that Vollbrecht's WIS. STAT. § 974.06 motion is barred by laches and its request that we certify the issue to the supreme court, we decline the State's invitation. The State concedes that the supreme court has previously held that laches does not apply under § 974.06. *See State v. Evans*, 2004 WI 84, ¶ 35, 273 Wis. 2d 192, 682 N.W.2d 784, *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900; *see also State v. Bembenek*, 140 Wis. 2d 248, 251–52, 409 N.W.2d 432 (Ct. App. 1987) (a motion seeking a new trial on the basis of newly discovered evidence may be brought at any time). To the extent that the State would like the supreme court to revisit this holding, the State is welcome to pursue it on further appeal.

for an erroneous exercise of discretion. *See Plude,* 310 Wis. 2d 28, ¶ 31. If the defendant satisfies all four criteria, the reviewing court then examines whether it is reasonably probable that, had the jury heard the newly discovered evidence, it would have had a reasonable doubt as to the defendant's guilt. *See id.,* ¶ 32. This presents a question of law. *Id.,* ¶ 33. A reasonable probability of a different outcome exists if there is a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to the defendant's guilt. *Id.*

*Application of Newly Discovered Evidence Criteria*

 *1. The evidence was discovered after conviction.*

¶ 19. Turning to the first requirement, we are satisfied, as was the postconviction court, that the evidence pertaining to Brown was discovered after Vollbrecht's conviction, with the exception of the Brown criminal complaint and the search warrant returns listing the books found at Brown's residence. The State does not dispute on appeal the postconviction court's finding as to this criterion.

 *2. Vollbrecht was not negligent in
 discovering the evidence.*

■
¶ 20. The second inquiry is whether Vollbrecht was negligent in failing to discover the Kim Brown evidence. The Brown evidence at issue falls into two categories: (1) statements made by inmates (Pepin and Schultz) after the trial and (2) evidence undisclosed by the State prior to trial (Brown's work records, the Hoeffler and Lawver statements, portions of Brown's PSI, and a DCI report indicating that there did not seem to be a connection between the Nachreiner and Hackl

homicides). In determining that Vollbrecht was not negligent in uncovering the Brown evidence prior to trial, the postconviction court found: (1) Pepin's and Schultz's statements occurred after trial, (2) the Brown material related to the Nachreiner murder was in the possession of the State and Vollbrecht was assured by the trial prosecutor that the State did not possess any evidence linking Brown to the Hackl homicide, and (3) Vollbrecht could reasonably rely on the representations of the prosecutor. The postconviction court also found that the DNA technology was not available until after trial. Based on our review of the record, the postconviction court's findings are sufficiently supported.

¶ 21. Specifically, the postconviction court found that evidence related to Pepin's testimony regarding Brown's confession to the Hackl murder was first discovered by the defense in 1994. Pepin's uncontradicted testimony indicated that he sent two letters informing Vollbrecht of this information in early 1994, but he did not receive a response. As to Schultz's testimony that he overheard Brown state that Brown killed Hackl, the postconviction court found that Vollbrecht would have been informed of this conversation sometime after May 1992. Based on the timing of these statements, there is no question but that Vollbrecht could not have discovered them prior to his trial.

¶ 22. The State contends that Vollbrecht should be faulted for waiting so long to act on this information and invites this court to construe the negligence prong of the newly discovered evidence test to impose a duty to act promptly after discovery of new evidence. We decline to do so. As the State acknowledges, this requirement does not currently exist. Further, any delay in raising newly discovered evidence can be adequately

explored at trial and weighed by the fact finder in determining the credibility of any explanations provided, as well as the evidence itself.

¶ 23. As to the Brown evidence, while the parties dispute whether the State's failure to disclose the evidence constituted a violation of *Brady*, we need not reach that question. Rather, our focus in addressing newly discovered evidence is on Vollbrecht's conduct and whether he was negligent in failing to uncover the Brown evidence. We conclude that he was not. The record from Vollbrecht's 1989 trial indicates that the prosecutor informed the defense that the State did not have any evidence connecting Brown to the Hackl homicide.[15] As a result, no further investigation of Brown was undertaken. We conclude, as did the postconviction court, that Vollbrecht reasonably relied on the State's representation. We therefore reject the State's contention that Vollbrecht was negligent in failing to uncover the Brown evidence.

3. *The newly discovered evidence is material to the identity of Hackl's killer and is not cumulative.*

¶ 24. Next, we turn to whether the newly discovered evidence is material to an issue in the case—here,

---

[15] At an August 1989 pretrial hearing on Vollbrecht's motion to compel, Vollbrecht's attorney, Warren Kenney restated his request for "any and all leads sheets, memoranda, internal reports regarding any other suspects in the death of Angela Hackl." Kenney told the prosecutor, "Tell me you've got nothing on Kim Brown; I take it at your word." The prosecutor replied: "We don't." Left with that answer, Kenney stated, "So if you don't, I guess it's—that leaves us . . . the boyfriend." Given Vollbrecht's broad request and the prosecutor's response, we reject the State's contention that Vollbrecht was negligent in not specifically requesting certain documents.

the identity of the person who murdered Hackl. It is this inquiry that involves the application of our holdings in *Denny*, 120 Wis. 2d 614, and *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

a. *Denny analysis.*

■

¶ 25. If evidence of third-party culpability would not be admissible at trial under *Denny*, then it could not be material to the issue of guilt or innocence. In order to present evidence and make argument suggesting that a third party may have committed the charged crime, a defendant must show that the third party had (1) opportunity; (2) motive; and (3) a direct connection to the crime that is not remote in time, place or circumstances. *See Denny*, 120 Wis. 2d at 622, 624–25. The admissibility of evidence is committed to the circuit court's discretion and we will not reverse such decisions if there is a reasonable basis in the record. *See id.* at 625, 626; *State v. Jackson*, 188 Wis. 2d 187, 194, 525 N.W.2d 739 (Ct. App. 1994) (whether to admit or exclude evidence is within the discretion of the circuit court, and we review that decision using the erroneous exercise of discretion standard).

¶ 26. *Opportunity.* Here, the State takes issue with the postconviction court's finding that Brown had the opportunity to kill Hackl. The postconviction court reasoned:

> As for opportunity, . . . Kim Brown resided near Oxford, Wisconsin, and the Nachreiner homicide was about 7 1/4 miles from his house. Hackl was found dead outside of Sauk City . . . approximately 30 miles from where Nachreiner's body was found. Therefore, Brown lived about 30 miles from where Hackl's body was

found.[16] Brown worked out of Portage, which was within approximately 30 miles of both homicides. According to Vollbrecht, Hackl was alive when she left him at around 3:30 a.m. in Prairie du Sac (he believed the earliest would have been 3:15 a.m.). The evidence adduced at Vollbrecht's trial was that the Pontiac that was identified as being at Hackl's crime scene was found at 4:45 a.m. on June 12, 1987 along the side of the road near Highway 12. The evidence presented at trial would show a window of opportunity between 3:15 a.m. and 4:45 a.m. on June 12, 1987, or about 1 hour and thirty minutes where Hackl may still have been alive and available to be the victim of Brown. The evidence shows that Brown was clocked out of work at around 5:00 p.m. on the evening before the morning Hackl was murdered. He clocked back in again at around 7:00 a.m. on the morning of the Hackl homicide. The Court finds that Kim Brown was in the general area of the homicide at the time Hackl was murdered. The Court finds that he had limited, but sufficient, opportunity to commit the Hackl assault and homicide. (Record citations omitted.)

In support of its contention that the postconviction court's reasoning is "legally and factually flawed," the State argues that "opportunity must mean more than that the third party's geographical location makes it

---

[16] We acknowledge that the State disputes the postconviction court's distance calculation from Brown's home; however, we are not convinced that the alleged discrepancy would change the analysis. The homicides occurred thirty miles apart. The postconviction court reasoned that because of the rural area, an individual can "cover 30 miles in 30 minutes." Further, the court concluded that the murders were "close in place" given that the areas of the two homicides were not densely populated and the "pool of potential sex killers" theoretically small as compared to a more densely populated area.

90

theoretically possible for him to have committed the crime." We reject the State's characterization of the postconviction court's ruling. The record reflects that the postconviction court's determination as to opportunity was made in light of the evidence presented as to motive and direct connection. We agree with Vollbrecht that facts give meaning to other facts and that the significance of Brown's opportunity to commit the crime depends on his alleged motive and direct connection. This is precisely why *Denny* requires that all three be shown before evidence of a third-party perpetrator is admitted at trial.

¶ 27. *Motive.* As to motive, the original trial court found that there was no specific (or personal) motive for Hackl's murder. Rather, as the postconviction court found:

> [T]he motive for the crime was to sexually assault Hackl and then kill her to cover it up, or to perpetrate violence on Hackl through rape and murder. Hackl's homicide had evidence of a sexual motive as she was found almost totally naked, with torn clothing. She was killed by being shot in the back. Her body was found hanging in a tree by a chain looped around her neck and with brush pulled around her. (Described by the prosecutor at trial as follows: "If you put a match to that, you would have a human sacrifice.").

The newly discovered evidence included statements from Hoeffler and Lawver that Brown indicated in 1987 that he liked to chain women to a tree, slap them around, light them on fire, and shoot them. The postconviction court found Hoeffler and Lawver "both worthy of belief, in other words, within the realm of believability such that a reasonable juror could believe the evidence." We defer to the circuit court's credibility

91

determination, *see State v. Jenkins*, 2007 WI 96, ¶ 33, 303 Wis. 2d 157, 736 N.W.2d 24, and agree with its assessment that these alleged statements provide "strong specific evidence of motive to sexually assault and kill Angela Hackl."[17]

¶ 28. *Direct connection.* The above evidence also contributed to the postconviction court's finding of a direct connection between Brown and the crime charged. The postconviction court reasoned:

> [O]nly a minute percentage of the male population would desire to sexually assault a woman, an even smaller percentage would then murder the victim, and a much smaller number yet would also have the desire to chain the women to trees and burn them. The Court finds that the similarities of what Kim Brown stated he liked to do with women and what was actually done to Angela Hackl is a specific, uncommon, and distinctive motive. The motive was allegedly voiced by Brown within about two months of the Hackl homicide, . . . someone who lived about 30 miles from the site of the Hackl homicide.
>
> The Court finds that the facts of Brown's specific and unusual motive provides direct evidence of the imprint and identity of Kim Brown . . . .
>
> This distinct motive would be direct evidence of the identity of the murderer.

---

[17] The circuit court determined that evidence that Brown possessed and read books involving torture, bondage, chaining and raping of women was also indicative of motive and thus relevant under the analysis set forth in *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). The court did so despite its determination that this evidence was not in the sole possession of the State for purposes of *Brady* and was not newly discovered evidence. Because the Hoeffler, Lawver, Schultz and Pepin statements provide sufficient evidence of motive, we need not consider the book evidence.

The court also considered the statements made by Pepin and Schultz that Brown stated he killed Hackl as direct evidence linking Brown to the crime.[18]

¶ 29. *Direct connection: Sullivan analysis.* Adding to the court's determination as to a direct connection was Brown's confessed involvement in the Nachreiner murder. While "other-acts evidence" is generally excluded, Wis. Stat. § 904.04(2), the Nachreiner evidence was deemed admissible by the postconviction court under the "identity exception" set forth in *State v.*

---

[18] The State does not challenge the postconviction court's determination that the testimony of Schultz and Pepin was admissible as nonhearsay prior inconsistent statements, as Brown had testified and denied any involvement in Hackl's homicide. In relying on the Pepin and Schultz testimony, the postconviction court noted the State's contention that Pepin and Schultz were "not worthy of belief." Noting its duty to assess the credibility of witnesses, the postconviction court set forth its reasoning before stating: "Schultz's and Pepin's statements are sufficiently corroborated so that the Court cannot find and does not find that Schultz and Pepin are inherently incredible . . . . Their testimony, with the corroboration, is within the realm of believability such that a reasonable juror could believe the evidence." The court added that "Brown has been convicted of eight crimes, and . . . was not the paragon of truth."

The State contends on appeal that the testimony of Schultz and Pepin is incredible as a matter of law. To be incredible as a matter of law is to be inherently or patently incredible; that is, "in conflict with the uniform course of nature or with fully established or conceded facts." *Estate of Neumann v. Neumann,* 2001 WI App 61, ¶ 27, 242 Wis. 2d 205, 626 N.W.2d 821. While the State points to facts, chronology and inferences that discredit the testimony (and, to the extent admissible, could be used to do just that at trial), we are not convinced that any of it renders the testimony patently incredible. We defer to the circuit court's credibility determination. *See State v. Jenkins,* 2007 WI 96, ¶ 33, 303 Wis. 2d 157, 736 N.W.2d 24.

*Scheidell*, 227 Wis. 2d 285, 294–95, 300–01, 595 N.W.2d 661 (1999). *See also Sullivan*, 216 Wis. 2d 768. In *Scheidell*, the supreme court held that when a defendant proffers evidence of other acts committed by a third party, the court should engage in the three-step analytical framework outlined in *Sullivan*. *See Scheidell*, 227 Wis. 2d at 301–02, 305–06.

¶ 30. The *Sullivan* analysis requires a circuit court to consider (1) whether the other-acts evidence is offered for a permissible purpose; (2) whether the other-acts evidence is relevant; and (3) whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. *Sullivan*, 216 Wis. 2d at 772. We review the circuit court's admission of other-acts evidence under an erroneous exercise of discretion standard. *Id.* at 780. Thus, we will sustain an evidentiary ruling if the record shows that the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *Id.* at 780–81.

¶ 31. Here, applying the *Sullivan* analysis, the postconviction court found that the other-acts evidence pertaining to the Nachreiner homicide was admissible for permissible purposes—motive and identity. The postconviction court additionally found that the evidence was relevant; it relates to a fact or proposition of consequence, namely the identity of Hackl's murderer. It is with the third *Sullivan* inquiry—the probative value of the evidence—that the court considers the

similarities which tend to identify a third party rather than the defendant. *Scheidell*, 227 Wis. 2d at 301. Proffered evidence of other acts of a third party must do more than simply afford a possible ground of suspicion against another person; it must connect that person to the crime—either directly or inferentially. *Id.* The "identity exception" to other-acts evidence under Wis. STAT. § 904.04(2) requires that similarities exist between the other act and the offense for which the defendant is being tried. *Scheidell*, 227 Wis. 2d at 305. "[T]he threshold measure for similarity in the admission of other acts evidence with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged." *Id.* "Similarities which tend to identify a third party rather than the defendant as the perpetrator of an act also tend to ensure the probity of the other acts evidence." *Id.* It is the probity of the evidence which the court must balance against the considerations contained in Wis. STAT. § 904.03, using the framework set forth in *Sullivan*.

¶ 32. Here, the postconviction court observed that the probity of other-acts evidence for identity depends on whether the similar facts are distinctive and unusual so that the probability of finding the presence of those facts in two different crimes due to chance alone would be relatively low. In comparing the Nachreiner and Hackl homicides, the court summarized the evidence as follows.

> Both Hackl and Nachreiner were young women killed in a wooded area. That fact, alone, is not particularly distinctive. Both were killed in a place that was known as a party place for young people. That fact is a bit more distinctive, as such a place is different than general woodland or forest land that is common in the counties in which these crimes were committed. Nachreiner was

95

shot once in the back of the head and Hackl was shot three times in her back. Again, the court does not find that fact particularly distinctive—but the Court does take note that being shot in the back is often considered a different type of homicide than one where the victim is shot in the face or front. Being shot in the back is more of an execution type of homicide, rather than a killing out of anger or during a robbery. Nachreiner had been sexually assaulted. Based on the fact that Hackl was almost naked, and her bra, shorts, and panties torn, there was strong evidence that the Hackl homicide also had sexual motivations. The sexual motivation differentiates these homicides from a killing as a result of a robbery, domestic violence, or specific animus toward a victim. Nachreiner, while alive, was naked from the waist down and had a piece of her jeans tied to her ankle and a chain fastened around her neck and to a tree. Hackl was found naked, except for shoes, with her torn shorts (not her panties) on one foot. She was suspended by a chain fastened around her neck and to a tree. The perpetrators of both of these homicides chained their victims by the neck to a tree. Brown made a statement in the PSI that he locked a chain around Nachreiner's neck and then locked the other end to a tree. Hackl was found chained to a tree by her neck with a tire chain.

The postconviction court also noted that the murders were near in time and place. They took place six weeks apart in the summer of 1987 and occurred approximately thirty miles apart in adjoining rural counties and in wooded areas known for young people partying there. The postconviction court found that the circumstances of these two crimes were distinct and similar and, therefore, the other-acts evidence regarding the Nachreiner evidence was highly probative as to identity. It further found that the probative value of the other-acts evidence was not substantially outweighed by the

96

danger of unfair prejudice, confusion of the issues, misleading the jury, or undue delay.

¶ 33. We have reviewed the record and we are satisfied that the postconviction court's findings as to the facts and circumstances of the two crimes are not clearly erroneous. In reaching its determination that evidence of the Nachreiner murder is admissible other-acts evidence, the court then examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *See Sullivan*, 216 Wis. 2d at 780–81. We have no basis upon which to disturb the postconviction court's discretionary determination. Finally, as to the fourth inquiry, there is no suggestion, nor could there be, that the newly discovered evidence is cumulative. Having concluded that Vollbrecht made a sufficient showing of newly discovered evidence, we next turn to whether there exists a reasonable probability of a different result at a new trial.

*Vollbrecht is entitled to a new trial.*

¶ 34. "In order to set aside a judgment of conviction based on newly-discovered evidence, the newly-discovered evidence must be sufficient to establish that a defendant's conviction was a 'manifest injustice.'" *Plude*, 310 Wis. 2d 28, ¶ 32. Where, as here, the defendant has proven the first four criteria of the newly discovered evidence analysis, it must then be determined whether a reasonable probability exists that had the jury heard the newly discovered evidence, it would have had a reasonable doubt as to the defendant's

97

guilt.[19] *See id.* Clarifying the meaning of "reasonable probability" and the inquiry to be made on review, the *Plude* court explained:

> "A reasonable probability of a different outcome exists if 'there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt as to the defendant's guilt.' " A court reviewing newly-discovered evidence should consider whether a jury would find that the newly-discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt. This latter determination is a question of law.

*Id.,* ¶ 33 (citations omitted).

¶ 35. In addressing whether the newly discovered evidence presented by Vollbrecht entitled him to a new trial, the postconviction court wrote:

> The Court has considered all of the evidence presented at Vollbrecht's trial, and the evidence adduced at the most recent, lengthy post-conviction motion hearing, including the demeanor of all of the witnesses at the hearing. The Court finds there is a reasonable probability that after a jury considered all of the evidence presented at Vollbrecht's trial and the newly discovered evidence of Brown's specific and distinct motive—to fasten women to trees with a chain, to shoot them, and to burn them—and Brown's alleged confessions to the Hackl homicide, it would have a reasonable doubt that Vollbrecht is guilty.

---

[19] We acknowledge the parties' dispute as to the standard to be applied in assessing "reasonable probability." However, we are satisfied that the supreme court's recent statement in *State v. Plude,* 2008 WI 58, ¶¶ 32–33, 310 Wis. 2d 28, 750 N.W.2d 42, presents the standard to be applied.

Having reviewed the record and deferring to the post-conviction court's extensive findings of fact, we independently conclude that there is a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to Vollbrecht's guilt.

¶ 36. During the first trial, Vollbrecht was the only suspect in Hackl's murder. The newly discovered evidence would now present the jury with a viable alternative suspect: an individual who had expressed a desire to commit such a crime, who had confessed to committing a similar crime, and—if Pepin and Schultz are deemed credible—who had allegedly confessed to committing *this* crime.[20] The State sets forth in great detail the circumstantial evidence against Vollbrecht, including his statements as to his whereabouts on the morning of the homicide. We nevertheless conclude that the newly discovered evidence establishes a reasonable probability that a jury would have a reasonable doubt as to Vollbrecht's guilt.[21] *See Plude,* 310 Wis. 2d 28, ¶ 33.

---

[20] As noted earlier, the State provides numerous reasons to doubt the credibility of Pepin and Schultz and to discount the significance of the undisclosed Brown evidence; however, we see no error in the circuit court's determination that a jury could find these witnesses or evidence to be credible. *See State v. Edmunds,* 2008 WI App 33, ¶¶ 18–19, 308 Wis. 2d 374, 746 N.W.2d 590 (for purposes of newly discovered evidence, the circuit court's inquiry is whether a jury considering the witness's testimony may have a reasonable doubt as to the defendant's guilt).

[21] The State additionally cites evidence not introduced at trial, but which adds to the circumstantial evidence against Vollbrecht. This evidence, not considered by the circuit court, was that approximately one week after Hackl's murder, Vollbrecht was asked why he had wire in the back of his car and he

## CONCLUSION

¶ 37. We conclude that the postconviction court properly exercised its discretion in granting Vollbrecht's postconviction motion for a new trial.[22] The newly discovered evidence presented by Vollbrecht satisfied the requirements of *Denny* and *Sullivan*. We also conclude that the newly discovered evidence created a reasonable probability that a jury, looking at both the old evidence and the new evidence, would have a reasonable doubt as to Vollbrecht's guilt such that there exists a reasonable probability of a different outcome on retrial. We affirm the postconviction court's order.

*By the Court.*—Order affirmed.

---

responded, "That's what we are going to tie the next one up with." Vollbrecht allegedly made the remark prior to any information being published regarding Hackl being bound. The State argues that the circuit court erred in declining to consider this additional evidence. The State also argues that this court should consider evidence deemed inadmissible in a prior appeal, namely, testimony from two of Vollbrecht's prior girlfriends that he had taken them to The Pines area to have intercourse six and eighteen months before Hackl's murder. For purposes of this appeal, this evidence would not alter our determination that Vollbrecht is entitled to a new trial. Whether the newly discovered evidence renders this evidence relevant and admissible at a new trial will have to be addressed on remand.

[22] Because we reverse and remand based on newly discovered evidence, we need not reach Vollbrecht's argument that he is entitled to a new trial in the interest of justice.