ANN WALSH BRADLEY, J. (dissenting).
¶ 74 A jury found David McAlister guilty of several crimes. Now, with sworn affidavits in hand, he asserts that he has newly discovered evidence that his accomplices planned in advance to lie on the stand during his trial to falsely implicate him. The majority denies him an evidentiary hearing on his claim that he "was not, in fact, involved in the offenses for which he was convicted...."
¶ 75 The issue in this case is not whether McAlister's conviction should be vacated, or whether he should receive a new trial. It is merely whether he should be afforded the opportunity for an evidentiary hearing on his postconviction motion.
¶ 76 Our system of law has always operated under the theory that it is better for ten guilty people to go free than one innocent to languish in prison. See State v. Dubose, 2005 WI 126, ¶ 51 n.1, 285 Wis. 2d 143, 699 N.W.2d 582 (Butler, J., concurring); Furman v. Georgia, 408 U.S. 238, 367 n.158, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Marshall, J., concurring) (quoting William O. Douglas, Foreward to Jerome Frank & Barbara Frank, Not Guilty 11-12 *719 (1957) ); see also In re Winship, 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Yet, the majority opinion strays from this premise, favoring finality. What if McAlister's claims are true? What if his witnesses are *94 credible? We will never know because the majority has short-circuited the process and there will be no hearing.
¶ 77 Not only does the majority misstep by favoring finality over a search for the truth, it also stumbles in three significant ways. First, by refusing to accept the facts alleged as true for purposes of determining whether McAlister is entitled to an evidentiary hearing, the majority deviates from our established case law. See State v. Balliette, 2011 WI 79, ¶ 18, 336 Wis. 2d 358, 805 N.W.2d 334 ; State v. Love, 2005 WI 116, ¶¶ 54-55, 284 Wis. 2d 111, 700 N.W.2d 62. Second, it errs in determining that the new evidence is cumulative of that already presented. Third, it attempts to fit a square peg into a round hole by creating a false equivalency between recantation evidence and the alleged newly discovered evidence at issue here. I address each in turn.
I
¶ 78 This case revolves around McAlister's claim that his accomplices lied on the stand during his trial. With his postconviction motion, McAlister presented to the circuit court the affidavits of three prison inmates-Wendell McPherson, Corey Prince, and Antonio Shannon.
¶ 79 Each of the three inmates averred that he had contact with one of McAlister's accomplices, Alphonso Waters or Nathan Jefferson, prior to McAlister's trial. Most significantly, the affidavits indicate *720 that Waters and Jefferson stated that they planned to lie in an effort to implicate McAlister.
A
¶ 80 The majority errs first by failing to adhere to precedent. It denies McAlister a hearing when the facts, accepted as true, indicate that McAlister is entitled to relief.
¶ 81 The question before us is whether McAlister is entitled to an evidentiary hearing, giving him the opportunity to establish that a reasonable probability exists that a different result would be reached at trial. At this stage of the proceedings, we must accept the facts alleged in McAlister's motion as true. See Love, 284 Wis. 2d 111, ¶ 54, 700 N.W.2d 62. For our purposes, it is not relevant whether the alleged newly discovered evidence is admissible or whether it is credible. Id.
¶ 82 A court is not to base its decision solely on the credibility of the newly discovered evidence, unless it finds the new evidence to be incredible as a matter of law. State v. Avery, 2013 WI 13, ¶ 25, 345 Wis. 2d 407, 826 N.W.2d 60. Testimony is incredible as a matter of law or patently incredible if it is in conflict with the uniform course of nature or with fully established or conceded facts. State v. Vollbrecht, 2012 WI App 90, ¶ 28 n.18, 344 Wis. 2d 69, 820 N.W.2d 443 (citation omitted).
¶ 83 Love, 284 Wis. 2d 111, 700 N.W.2d 62, presents facts very similar to those here. In Love, the defendant was convicted of armed robbery and subsequently filed a motion for a new trial based on newly discovered evidence. Id., ¶¶ 19, 21. " Love included an affidavit from Christopher Hawley, who claimed to have met another inmate, Floyd Lindell Smith, Jr., while at *721 Green Bay Correctional Institution. Hawley averred that Smith admitted to robbing [the victim] and shared in-depth details regarding the incident." Id., ¶ 21. The circuit court denied the motion without an evidentiary hearing. Id., ¶ 23.
¶ 84 This court remanded for an evidentiary hearing. Id., ¶ 56. Like this case, Love turned on the reasonable probability prong of the newly discovered evidence test. Id., ¶¶ 52-53. The Love court accepted the facts as alleged in Love's postconviction *95 motion as true for purposes of its analysis:
Love's postconviction motion indicates that Hawley would testify that Love was not the assailant. Hawley will testify that Smith (or if Love can get Smith to testify, then it would be Smith's testimony that he) committed this crime. Whether that testimony is ultimately admissible is not relevant for our purposes here. Whether that testimony is credible is not relevant for our purposes here. It must be accepted as true.
Id., ¶ 54 (emphasis added).
¶ 85 Accepting Love's alleged facts as true, the court determined that Love was entitled to an evidentiary hearing. It explained:
If it is true, then the evidence against Love amounts to [the victim's] identification against another's assertion that Smith committed the crime. Thus, viewing the new evidence, particularly in light of the identification discrepancies, there is a reasonable probability that a jury, looking at both, would have a reasonable doubt as to Love's guilt.
Id., ¶ 55.
¶ 86 The only material factual difference between this case and Love is the timing of the alleged *722 statements-the affidavits here relate to an admission of future perjury, while in Love the affidavit related to an alleged admission to a past crime. In both cases, the affiant was a fellow inmate. As in Love, I would accept the alleged facts as true.
¶ 87 In his postconviction motion, McAlister alleged that "[l]ong after McAlister's direct appeal and after he filed his petition for writ of habeas corpus, he learned that Corey Prince, Wendell McPherson and Antonio Shannon had information confirming that McAlister was not involved in any robberies and that the State's two key witnesses against him, Alphonso Waters and Nathan Jefferson had conspired to frame McAlister in order to obtain relief from their own sentences."
¶ 88 Instead of accepting McAlister's alleged facts as true, the circuit court here stated orally that the affidavits are "inherently not believable." In its written order, it likewise concluded that they "have limited credibility." The circuit court thus went well beyond its role at this stage of proceedings, engaging in a personal, subjective assessment of witness credibility rather than accepting the facts presented as true.
¶ 89 The majority turns a blind eye to the circuit court's error and again delves into the credibility of the affiants' statements. In its misguided search for "circumstantial guarantees of trustworthiness," the majority laments that "the length of time that passed between McAlister's trial and the submission of the affidavits cuts against concluding that the affidavits are trustworthy." Majority op., ¶ 60. It further decries the "highly suspicious" nature of jailhouse statements made by those serving life sentences. Id., ¶ 61.
¶ 90 This inquiry goes beyond the court's role based on the procedural posture with which we are *723 presented. Properly leaving a credibility determination for a later date, the court's only determination here should be whether the McPherson, Prince, and Shannon affidavits are incredible as a matter of law.
¶ 91 I conclude that they are not. The statements are not so outlandish as to be in conflict with the "uniform course of nature." See Vollbrecht, 344 Wis. 2d 69, ¶ 28 n.18, 820 N.W.2d 443. Without an evidentiary hearing we simply do not know if the affidavits are credible. Accordingly, I would accept the alleged facts as true and determine that McAlister should be afforded *96 the opportunity for an evidentiary hearing.
B
¶ 92 The majority errs next by determining that the newly discovered evidence is merely cumulative of that already presented. It reaches this conclusion because "[t]he jury heard it all before." Majority op., ¶ 49. According to the majority, the alleged newly discovered evidence is "of the same general character and drawn to the same point for which proof was provided at trial, i.e., that Jefferson and Waters lied to benefit themselves[.]" Id., ¶ 51.
¶ 93 What was the "character" of the evidence offered? At trial, both Jefferson and Waters were cross examined regarding deals they made with the district attorney. See majority op., ¶¶ 9-11, 16. In each case, the district attorney agreed to recommend less prison time in exchange for their testimony. Id., ¶¶ 11, 16. This evidence could certainly offer a motive for Waters and Jefferson to lie and implicate McAlister, but it says nothing about whether Waters and Jefferson in fact conspired to frame McAlister.
¶ 94 In contrast, the affidavits of Prince, McPherson, and Shannon, if true, offer direct evidence *724 that Waters and Jefferson conspired to lie.[1] Direct evidence that Jefferson and Waters planned to lie is of a different general character than the circumstantial evidence of their motive to lie that was presented at trial. As McAlister aptly states in his brief, "evidence that Jefferson and Waters in fact conspired to frame McAlister is not cumulative to evidence that they had a motive to do so."
C
¶ 95 The majority's third error lies in its attempt to fit a square peg into a round hole by creating a false equivalency between recantation evidence and the alleged newly discovered evidence in this case.
¶ 96 Recantations are inherently unreliable. State v. McCallum, 208 Wis. 2d 463, 476, 561 N.W.2d 707 (1997) (citing Dunlavy v. Dairyland Mut. Ins. Co., 21 Wis. 2d 105, 114, 124 N.W.2d 73 (1963) ). "The recanting witness is admitting that he or she has lied under oath.
*97 Either the original sworn testimony or the sworn recantation testimony is false." McCallum, 208 Wis. 2d at 476, 561 N.W.2d 707. This is the reason behind the corroboration requirement for recantation testimony. Gehin v. Wis. Group Ins. Bd., 2005 WI 16, ¶ 98, 278 Wis. 2d 111, 692 N.W.2d 572.
¶ 97 Contrary to the majority's assertion, the evidence at issue here is not akin to recantation evidence. The alleged "recantation" is not the product *725 of the witnesses who are alleged to have lied on the stand, Jefferson and Waters. Rather, the alleged "recantation" statements are from three individuals who did not previously testify in this case. By definition, a recantation must consist of the witness withdrawing or renouncing prior testimony. See McCallum, 208 Wis. 2d at 476, 561 N.W.2d 707. Neither Waters nor Jefferson has submitted an affidavit recanting his trial testimony.
¶ 98 Consequently, the logic of the corroboration rule does not hold here. As we explained in McCallum, in the recantation situation "[t]he recanting witness is admitting that he or she has lied under oath. Either the original sworn testimony or the sworn recantation testimony is false." McCallum, 208 Wis. 2d at 467, 561 N.W.2d 707. Here, the alleged "recantations" of Jefferson and Waters were not made under oath. There is no sworn "recantation" testimony from the "recanters." The "either/or" situation described in McCallum is not present here because Jefferson and Waters each made only one statement under oath-his trial testimony.
¶ 99 The statements at issue are better characterized as prior inconsistent statements rather than a "recantation." A prior inconsistent statement is not "inherently unreliable" as is a recantation. To the contrary, a prior inconsistent statement is reliable enough to constitute a non-hearsay statement. See Wis. Stat. § 908.01(4)(a)1. The majority's attempt to force the evidence here within the category of "recantation" evidence is simply unconvincing.
II
¶ 100 If a Wis. Stat. § 974.06 motion raises sufficient facts that, if true, show that the defendant is entitled to relief, the circuit court must hold an evidentiary *726 hearing. Balliette, 336 Wis. 2d 358, ¶ 18, 805 N.W.2d 334. The sworn affidavits assert that witnesses lied and McAlister maintains he was not involved in the offense for which he was convicted. Accepting the facts as alleged in McAlister's motion as true, I conclude that McAlister has shown he is entitled to relief. I therefore would reverse the court of appeals and remand to the circuit court for an evidentiary hearing.
¶ 101 Accordingly, I respectfully dissent.
¶ 102 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

That there was no direct evidence of a conspiracy presented at trial was repeatedly highlighted by the prosecutor during closing argument. The State's closing argument was peppered with statements such as, "[t]here's no evidence they ever met and talked about it" and "there is no evidence they ever even talked." If true, the McPherson, Prince, and Shannon affidavits do provide such evidence.