COURT OF APPEALS
DECISION
DATED AND FILED

January 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1247-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF75**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MATHEW ROBERT LAUSENG,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Bayfield County: JOHN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mathew Robert Lauseng appeals a judgment of conviction, entered upon a jury's verdicts, for second-degree sexual assault of a

child and distribution of tetrahydrocannabinols (THC) to a minor. Lauseng also appeals an order denying his motion for postconviction relief.

¶2     Lauseng argues that the circuit court erred by excluding evidence regarding an alleged conspiracy by the victim and her father to falsely accuse another man of sexual assault. He also argues that the exclusion of that evidence violated his constitutional right to present a defense and that his trial attorney was constitutionally ineffective by failing to investigate the conspiracy evidence and argue in favor of its admission. In addition, Lauseng argues that the court erred by admitting evidence, over his objection, about a music video that he allegedly showed the victim before the assault. Finally, Lauseng requests a new trial in the interest of justice. We reject each of Lauseng's arguments and affirm.

## BACKGROUND

¶3     The charges against Lauseng were based on allegations that he provided marijuana to and then sexually assaulted Mary, the fifteen-year-old daughter of Lauseng's roommate.[1] Before trial, and while represented by counsel, Lauseng filed a pro se motion to compel production of Mary's phone records. According to Lauseng, text messages on Mary's phone would show that Mary and Dad were conspiring to "set up" Mom's boyfriend "on a 'rape charge.'" Lauseng asserted that Dad had shown him some of these text messages. He also asserted

---

[1] Following the State's example, and pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we refer to the victim in this case by the pseudonym "Mary." We refer to Mary's parents as "Mom" and "Dad," and we refer to Mary's friend who testified at trial using the pseudonym "Maureen."

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that there were "other witnesses" who would "confirm these accusations, for they verbally heard [Mary and Dad] planning and coercing." Lauseng further claimed that Mary and Dad ultimately "set [Lauseng] up" on a rape charge instead of Mom's boyfriend "because [Dad] was jealous of [Lauseng]."

¶4 After Lauseng moved to compel production of Mary's phone records, the State filed a motion in limine seeking to prevent Lauseng from introducing evidence that Mary "either had [a] sexual relationship or had planned to have a sexual relationship with a third person," asserting that such evidence was both irrelevant and inadmissible under the rape shield statute, WIS. STAT. § 972.11(2). At a hearing on the parties' respective motions, the State specifically argued that Lauseng's proffered evidence about a conspiracy between Mary and Dad to falsely accuse another man of sexual assault would not be admissible under § 972.11(2)(b)3. as evidence of a prior untruthful allegation of sexual assault because there was no evidence that Mary ever actually made a false allegation of sexual assault against Mom's boyfriend. The State also argued that the conspiracy evidence did not meet the test for admissibility set forth in *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990).

¶5 In response, Lauseng's trial attorney stated that he did not object to the State's motion to exclude the conspiracy evidence. The circuit court then ruled that the "conspiracy allegation" did not qualify as evidence of a prior untruthful allegation under WIS. STAT. § 972.11(2)(b)3. The court therefore granted the State's motion to exclude the conspiracy evidence.

¶6 At trial, Mary testified about events that occurred on August 10, 2018, when she was fifteen years old. On that date, Mary's parents were living separately, and Lauseng was Dad's roommate. Mary testified that she had met

Lauseng for the first time in March 2018, and although she and Lauseng were on friendly terms, they had never hung out alone.

¶7     Mary testified that on the evening of August 10, 2018, Dad took Mary, Mary's three-year-old twin siblings, Lauseng, and Jen, a woman Dad was dating, to a party at a house in Ashland. At the party, the twins swam in the pool while the adults and Mary drank alcohol. At some point, Dad and Lauseng left the party to take Jen home. Lauseng and Dad later returned for Mary and the twins. After picking them up, Lauseng dropped Dad off at Jen's home, stopped at a convenience store, and then took Mary and the twins back to Lauseng's and Dad's residence.

¶8     Mary testified that when they returned home, she put the twins to bed. Afterwards, Lauseng offered Mary marijuana, which she accepted, and they smoked it from a beer can that Lauseng fashioned into a smoking device. Lauseng and Mary then sat on the couch for about forty-five minutes listening to music.

¶9     Mary testified that Lauseng eventually showed her a music video for a song called "Dance with the Devil." When Mary started to describe the music video's contents, Lauseng's trial attorney objected; however, the circuit court overruled the objection following a sidebar. Mary then testified that the music video depicted a woman being kidnapped, beaten, and gang raped. Mary testified that she was confused when Lauseng showed her the video and that the mood shifted to "weird" and "dark."

¶10     After showing Mary the video, Lauseng said that the music was done, stood up, turned off the lights, grabbed a blanket, and sat down closer to Mary than he had been before. He started rubbing Mary's leg before repositioning her body on the couch and pulling off her pants. Mary asked what Lauseng was

doing, and he responded, "[P]robably something stupid." Lauseng then put his fingers into Mary's vagina, and he subsequently took off his pants and inserted his penis into her vagina. Mary testified that the assault lasted for about ten minutes. Afterwards, Lauseng apologized and asked if Mary was mad at him. Mary said "no," put her pants back on, and went into the room she shared with the twins.

¶11 After sitting in her room "for a bit," Mary called her friend Maureen and told her what had happened. Maureen told Mary to tell Mom about the assault. Mary then left the house with her younger siblings and went to a gas station, where she called Mom. After the police, Mom, and Mary's grandparents arrived at the gas station, Mom and Mary's grandmother took Mary to the hospital for an examination by a sexual assault nurse examiner. A DNA analyst from the Wisconsin State Crime Laboratory testified that semen matching Lauseng's DNA was found on swabs taken from Mary's vagina, cervix, and external genitals.

¶12 Maureen and Mom corroborated that Mary had called them during the early morning hours of August 11, 2018, and they variously described Mary as "terrified," "scared," "in shock," "crying," and "frantic." A police officer who responded to the gas station described Mary as "visibly upset," "crying," and "in shock." Mary told the officer that "she was involved in a sexual assault."

¶13 Later that morning, the police arrested Lauseng at his home. Inside the home, the police found a beer can that had been fashioned into a smoking device, which later tested positive for marijuana. During an interview with the police following his arrest, Lauseng admitted that he had given Mary marijuana. However, he denied that any sexual contact had occurred between him and Mary, and when the police specifically asked whether Mary had come onto him, he said "absolutely no."

5

¶14 At trial, Lauseng testified and largely corroborated Mary's description of the evening, up through the time when he and Mary smoked marijuana. He testified, however, that after smoking the marijuana, he fell asleep on the couch and woke to find Mary on top of him with her pants off and his pants pulled down. Lauseng testified that he sat up and asked Mary what she was doing, and she then got off of him. He testified that he and Mary were both intoxicated and that the situation was "very awkward." Mary went into her bedroom, and Lauseng went back to sleep on the couch. The next thing Lauseng remembered was the police entering his home and arresting him for sexual assault. Lauseng testified that he did not tell the police that Mary assaulted him because he "panicked" and "did not know how to react" to Mary's accusation that he had raped her.

¶15 On rebuttal, Mary testified that Lauseng's version of events was "ridiculous." She testified that she did not want any sexual contact with Lauseng, and she denied sexually assaulting him.

¶16 The jury found Lauseng guilty of both charges. Lauseng subsequently filed a postconviction motion for a new trial. As relevant here, Lauseng argued that: (1) the circuit court erred by excluding evidence that Mary and Dad had conspired to falsely accuse Mom's boyfriend of sexual assault; and (2) Lauseng's trial attorney was constitutionally ineffective by failing to advocate for the admission of the conspiracy evidence.

¶17 Lauseng submitted an investigator's report in support of his postconviction motion. According to the report, Naomi Zwetlow told the investigator that when she was at a party with Lauseng, Dad, and Mary, she overheard a conversation in which Dad offered to buy Mary a phone to do

something for him. Zwetlow could not recall what Dad asked Mary to do, but Zwetlow described it as "not legal" and "vengeful." Zwetlow also told the investigator that on the night of the "rape," Dad had "malicious intent" toward Lauseng because he had walked in on Lauseng having sex with Dad's girlfriend, Jen.

¶18 The investigator's report also recounted statements made by Bryan Gary. Gary told the investigator that he remembered a conversation at a party in which it seemed that Dad "was trying to set [Mom's boyfriend] up for a child enticement case." Gary remembered Dad telling Mary "to say [Mom's boyfriend] walked around in front [of] her while naked and that he showered with the door open." Gary also told the investigator that Dad was mad at Lauseng for sleeping with Jen.

¶19 The circuit court held an evidentiary hearing on Lauseng's postconviction motion, at which both Lauseng and his trial attorney testified. The court subsequently denied the motion. In its oral ruling, the court explained that it was "satisfied" that its original ruling excluding the conspiracy evidence was "correct." The court stated there was no evidence that Mary had ever agreed to falsely accuse anyone of sexual assault. Consequently, the conspiracy evidence, at most, implicated Dad's motives and credibility, but "[y]ou can't transfer the … bad credibility of that person to the credibility of the victim." The court therefore concluded that the conspiracy evidence was not relevant and, in any event, was "too prejudicial" to be admitted. Lauseng now appeals.

## DISCUSSION

### I. Conspiracy evidence

¶20 On appeal, Lauseng first argues that the circuit court erred by excluding his proffered evidence of a conspiracy between Dad and Mary to accuse Mom's boyfriend of sexual assault. A circuit court's decision to admit or exclude evidence is reviewed for an erroneous exercise of discretion. *State v. Mulhern*, 2022 WI 42, ¶18, 402 Wis. 2d 64, 975 N.W.2d 209. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (citation omitted).

¶21 Here, Lauseng asserts that the circuit court erroneously exercised its discretion by determining that the conspiracy evidence was inadmissible under the rape shield statute. In response, the State argues that the court did not err by determining that the evidence was inadmissible under that statute. Alternatively, the State argues that the court reasonably excluded the evidence because it was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice.

¶22 We agree with the State that the circuit court's exclusion of the conspiracy evidence was not an erroneous exercise of discretion because the evidence was not relevant.[2] "Evidence which is not relevant is not admissible."

---

[2] Although the circuit court originally excluded the conspiracy evidence under the rape shield statute, as noted above, the court later explained when denying Lauseng's postconviction motion that the evidence was not relevant and that its probative value was outweighed by the danger of unfair prejudice. In any event, we may search the record for reasons to sustain a circuit court's discretionary decision, *see Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737, and may affirm on other grounds, *see State v. Scheidell*, 227 Wis. 2d 285, 311 n.14, 595 N.W.2d 661 (1999).

WIS. STAT. § 904.02. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01.

¶23    In his reply brief on appeal, Lauseng asserts that the conspiracy evidence was relevant because "falsely accusing someone else of sexual assault makes it more likely that [Mary] had the knowledge and capacity to falsely accuse Lauseng." Lauseng also argues the evidence was relevant to show that Mary "had a motive to avenge her father" because Dad was "very upset" with Lauseng for having sex with Jen. According to Lauseng, "[a] motive and means to falsify the charge are highly relevant to the jury's determination of [Mary's] credibility."

¶24    As the circuit court correctly concluded, however, Lauseng's proffered conspiracy evidence, at best, implicated *Dad's* motives and credibility, not *Mary's* motives and credibility. While Lauseng's evidence, if believed by the jury, would have shown that *Dad* had a motive to falsely accuse Lauseng and had previously asked Mary to make a false accusation against Mom's boyfriend, there was no evidence that *Mary* ever actually made a false accusation against Mom's boyfriend or agreed to do so. As the State aptly notes, "Testimony that Dad once suggested to Mary that she should falsely accuse a person of sexual assault would be no more relevant than hypothetical testimony from a person who had once overheard Lauseng's father suggest to Lauseng that he should sleep with an underage girl."

¶25    Furthermore, the circuit court reasonably determined that even if the conspiracy evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. *See* WIS. STAT. § 904.03. "In most

instances, as the probative value of relevant evidence increases, so will the *fairness* of its prejudicial effect." **State v. Johnson**, 184 Wis. 2d 324, 340, 516 N.W.2d 463 (Ct. App. 1994). Consequently, "the standard for unfair prejudice is not whether the evidence harms the opposing party's case, but rather whether the evidence tends to influence the outcome of the case by 'improper means.'" **Id.** (citation omitted).

¶26 Here, as explained above, the probative value of the conspiracy evidence was nonexistent. As a result, if admitted, the evidence would have served only to influence the outcome of the case by improper means—that is, by suggesting to the jury that because *Dad* lacked credibility and had a motive to falsely accuse Lauseng, the jury should disbelieve *Mary's* testimony. Again, the evidence had no relevance to *Mary's* credibility or motive to falsely accuse Lauseng. Under these circumstances, the circuit court did not erroneously exercise its discretion by determining that the evidence was inadmissible under WIS. STAT. § 904.03.

¶27 Lauseng nevertheless asserts that the circuit court's exclusion of the conspiracy evidence violated his constitutional right to present a defense. However, "an accused's right to present a defense does not encompass the right to present irrelevant evidence." *See* **State v. Mull**, 2023 WI 26, ¶39, 406 Wis. 2d 491, 987 N.W.2d 707. We have already concluded that the conspiracy evidence was properly excluded as irrelevant. As such, the evidence's exclusion did not violate Lauseng's constitutional right to present a defense.

¶28 Lauseng also argues that his trial attorney was constitutionally ineffective by failing to investigate Lauseng's conspiracy claim and argue for the admission of the conspiracy evidence. To prevail on an ineffective assistance of

counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697.

¶29 Lauseng has failed to establish either deficient performance or prejudice stemming from his trial attorney's failure to argue in favor of admitting the conspiracy evidence. We have already determined that the conspiracy evidence was properly excluded. An attorney's failure to raise an argument that would have failed on the merits is neither deficient nor prejudicial. *See State v. Wheat*, 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441; *State v. Simpson*, 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994).

¶30 Lauseng's argument regarding his trial attorney's failure to investigate his conspiracy claim fares no better. Lauseng does not explain what additional evidence trial counsel would have discovered had he conducted an investigation regarding the conspiracy claim, beyond the evidence that Lauseng presented in support of his postconviction motion. After considering the evidence presented in support of the postconviction motion, the circuit court determined that the conspiracy evidence was inadmissible because it was irrelevant and its probative value was substantially outweighed by the danger of unfair prejudice. Again, we have already determined that the court did not erroneously exercise its discretion in that regard.

¶31 As a result, Lauseng has failed to show a reasonable probability that the outcome of the proceeding would have been different had his trial attorney

investigated his conspiracy claim. *See **Strickland***, 466 U.S. at 694. Lauseng has therefore failed to show that he was prejudiced by this alleged deficiency. *See **id.***

## II. Music video evidence

¶32 Lauseng next asserts that the circuit court erroneously exercised its discretion by allowing Mary to testify about the music video that Lauseng showed her before the assault. He contends that the music video evidence was not relevant and that its limited probative value was substantially outweighed by the danger of unfair prejudice. *See* WIS. STAT. §§ 904.01, 904.03.

¶33 Again, Mary testified that before the assault, Lauseng gave her marijuana and they then sat on the couch together and listened to music. Eventually, however, Lauseng showed Mary a music video that depicted a woman being kidnapped, beaten, and gang raped. Mary testified that after Lauseng showed her this video, the mood shifted to "weird" and "dark," and Lauseng then sexually assaulted her.

¶34 The circuit court determined that the music video evidence was relevant to "a state of mind" and to provide context regarding "what [the] circumstances were right before the alleged act." While the court acknowledged that the evidence was prejudicial, it stated the evidence's probative value was "important enough" to justify its admission.

¶35 The circuit court did not erroneously exercise its discretion by admitting the music video evidence. Mary's description of the music video helped to explain the mood and circumstances leading up to the assault. Specifically, her testimony showed how the mood between her and Lauseng was initially platonic, until Lauseng shifted the atmosphere by showing her a music video depicting a

sexual assault and violence. Mary's testimony about the music video also went to her and Lauseng's respective states of mind, undercutting Lauseng's defense that Mary instigated the sexual activity and that he did nothing to prompt or encourage her behavior. The evidence was therefore relevant to the jury's determination of whether Lauseng sexually assaulted Mary.

¶36 Lauseng argues that to the extent that the circuit court determined that Mary's description of the music video was relevant to either his or Mary's state of mind or intent, those topics were "not at issue" at his trial because intent is not an element of second-degree sexual assault of a child. We disagree with the notion that Lauseng's intent to have sexual intercourse with Mary was not at issue.

¶37 To convict Lauseng of second-degree sexual assault of a child, the State needed to prove two elements: (1) that Lauseng had sexual intercourse with Mary; and (2) that Mary was under sixteen years old at the time of the intercourse.[3] *See* WIS. STAT. § 948.02(2); WIS JI—CRIMINAL 2104 (2020). The jury was instructed that sexual intercourse "means any intrusion, however slight, by any part of a person's body or of any object, into the genital or anal opening of another" and that "[t]he act of sexual intercourse must be either by the defendant or upon the defendant's instruction." *See* WIS JI—CRIMINAL 1200B (2010). Thus, while Lauseng's specific intent to have sexual intercourse with a person under the age of sixteen was not an element of the offense, the State still needed to prove that Lauseng committed a volitional act—namely, that he had sexual

---

[3] Second-degree sexual assault of a child is also committed by a person who has sexual contact with a person under the age of sixteen. *See* WIS. STAT. § 948.02(2). In this case, the State's theory was that Lauseng had sexual intercourse with Mary, and the jury was not instructed regarding sexual contact.

intercourse with Mary. *See also State v. Hunt*, 2003 WI 81, ¶60, 263 Wis. 2d 1, 666 N.W.2d 771 ("There is no doubt that sexual assault, involving either sexual contact or sexual intercourse, requires an intentional or volitional act by the perpetrator."). As such, Lauseng's intent to have sexual intercourse with Mary was clearly at issue.

¶38 Lauseng next argues that even if his intent was at issue at trial, the music video evidence had no probative value with respect to his intent because the assault depicted in the video was not sufficiently similar to the charged crime. The "similarity" analysis that Lauseng invokes applies to determining the probative value of other-acts evidence. *See State v. Scheidell*, 227 Wis. 2d 285, 307-08, 595 N.W.2d 661 (1999). Mary's testimony about the music video was not other-acts evidence; it was evidence directly related to the circumstances surrounding the charged crime. Again, the music video evidence was relevant because it had a tendency to make it more probable that Lauseng had sexual intercourse with Mary, which was a fact of consequence to the jury's determination of the action. *See* WIS. STAT. § 904.01.

¶39 Lauseng also asserts that any "marginal" probative value that the music video evidence may have had was substantially outweighed by the danger of unfair prejudice. *See* WIS. STAT. § 904.03. The circuit court determined otherwise, and Lauseng has failed to show that the court erroneously exercised its discretion in that regard. As explained above, the music video evidence was probative of whether Lauseng had sexual intercourse with Mary. And while prejudicial to Lauseng, the music video evidence was not *unfairly* prejudicial. *See Johnson*, 184 Wis. 2d at 340. As the State notes, "Mary's description of the video was no more prejudicial than her allegations that Lauseng sexually assaulted her or the DNA evidence proving that Lauseng ejaculated inside of her." Moreover, the

jury never viewed the video. Instead, Mary provided a brief description of the video's contents, which did not include any particularly graphic details that would have been especially inflammatory. Under these circumstances, the court did not erroneously exercise its discretion by declining to exclude the music video evidence under § 904.03.

### III. New trial in the interest of justice

¶40     Finally, Lauseng asks us to grant him a new trial in the interest of justice. We may grant a new trial in the interest of justice "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." WIS. STAT. § 752.35. However, our discretionary reversal power is reserved for exceptional cases, *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258, and "should be exercised sparingly and with great caution," *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719.

¶41     Lauseng argues that he is entitled to a new trial in the interest of justice because the real controversy was not fully tried. Situations where the real controversy was not fully tried include those where the jury "was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case." *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). "To order a new trial because the real controversy has not been fully tried, this court need not determine that a new trial would likely yield a different result." *State v. Watkins*, 2002 WI 101, ¶97, 255 Wis. 2d 265, 647 N.W.2d 244.

¶42     Lauseng argues that the real controversy was not fully tried because he was not permitted to present evidence regarding the alleged conspiracy between Mary and Dad to falsely accuse Mom's boyfriend of sexual assault. He contends

that without that evidence, "the jury had no evidence to question" Mary's credibility. He therefore asserts that "the exclusion of [the conspiracy] evidence prevented [him] from fully litigating his defense at trial."

¶43 Lauseng has failed to show that the real controversy was not fully tried. We have already determined that the conspiracy evidence was not relevant to Mary's credibility and that whatever limited probative value it may have had was substantially outweighed by the danger of unfair prejudice. Furthermore, Lauseng's attempt to portray this case as a pure credibility contest between himself and Mary ignores the DNA evidence, which strongly corroborated Mary's version of events. Under these circumstances, we are not convinced that this is the type of exceptional case warranting the use of our discretionary reversal power. *See McKellips*, 369 Wis. 2d 437, ¶52.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.